## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **DAVID TIMBERS,** | * |
| Plaintiff, | * |
| v. | * |
| **TELLIGENT MASONRY, LLC, et al.,** | *   CIVIL NO. JKB-21-00293 |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff David Timbers brings several claims against Defendants Telligent Masonry, LLC d/b/a Telligent Masonry Construction ("Telligent") and Tia Taylor. (*See generally* Am. Compl., ECF No. 10.) Timbers brings suit against Telligent for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.*, and violations of 42 U.S.C. § 1981 and against Taylor for violations of 42 U.S.C. § 1981. (*See* Am. Compl. ¶ 1.)

Now pending before the Court are Defendants' Motions to Dismiss. (ECF Nos. 8, 9, 12, 13.) As an initial matter, the Court notes that Telligent and Taylor filed Motions to Dismiss Timbers' original Complaint. (ECF No. 1 (Complaint); ECF Nos. 8, 9 (Motions to Dismiss).) Because Timbers subsequently filed an Amended Complaint, the Court denies these Motions to Dismiss as moot. Telligent and Taylor filed Motions to Dismiss the Amended Complaint. (ECF Nos. 12, 13.) The Motions to Dismiss the Amended Complaint are fully briefed and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth below, the Court will deny the Motions to Dismiss. (ECF Nos. 12, 13.)

1

## I.     *Factual Background*

Timbers began his employment at Telligent as a brick mason in March 2019. (Am. Compl. ¶ 11.) Timbers alleges that he was discriminated against because he is African American and that he was retaliated against for making internal complaints regarding the discrimination. (*Id.* ¶¶ 13–14.)

Timbers alleges that, beginning on July 31, 2020, his three supervisors—Jose Valladares, Joseph Williams, and Tranquilino Villegas—denied him work opportunities and reduced his hours. (*Id.* ¶¶ 13, 15.) When construction was temporarily halted at a Reston, Virginia worksite where Timbers was working on July 31, 2020, he and his brother (who is also African American) were directed to another worksite in Gainesville, Virginia. (*Id.* ¶ 16.) When they arrived, Valladares told them that there was no work for them. (*Id.*) However, before Timbers and his brother left the worksite, "a group of fellow Brick Masons, all of whom were Hispanic and employees of Defendant Telligent arrived . . . and were put to work." (*Id.*) Timbers and his brother were "begrudgingly" permitted to work for the day, but "[a]t the end of the day, Defendant Telligent and supervisor Jose Valladares told [Timbers] and his brother not to return to the Gainesville, Virginia work site and, if they did, he would not assign them any work." (*Id.*) Timbers alleges that similarly situated non-African American brick masons, who were also supervised by Valladares, Williams, and Villegas, were not denied work opportunities or assigned reduced hours of work. (*Id.* ¶ 17.) He alleges that these other brick masons "were subject to the same work standards . . . and were performing the same work and the same standard of work" as him. (*Id.*) Timbers alleges that "[n]o differentiating or mitigating circumstances exist that justify Defendant Telligent's more favorable treatment of these non-African American Brick Masons in comparison

to Defendant Telligent's less favorable treatment of [Timbers], other than their status as non-African Americans." (*Id.*)

Timbers alleges that he was not assigned any work for several days after July 31, 2020 and, thereafter until his termination on September 23, 2020, was assigned reduced hours. (*Id.* ¶ 18.) Timbers alleges that this reduction in hours was "not due to any business justification or circumstances on the part of Defendant Telligent, as other non-African American Brick Masons continued to work their regular hours." (*Id.*)

Timbers made an internal complaint to Villegas on about September 16, 2020. (*Id.* ¶ 19.) He indicated that he believed that the July 31, 2020 incident and the following reduction in hours was due to his race. (*Id.* ¶ 20.) He also explained that, if he was not returned to regular hours, he would file a charge with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 20.) He contacted Human Resources ("HR") and spoke with Taylor (HR Specialist, Telligent) on September 23, 2020. (*Id.* ¶¶ 21–22.) During that conversation, Timbers reiterated his complaint of race discrimination and reduction of hours, and indicated that he would file a charge of race discrimination with the EEOC. (*Id.* ¶ 23.) Taylor "opened an alleged investigation into his claims of race discrimination," but this investigation "lasted only a few hours." (*Id.* ¶¶ 24–25.)

Timbers alleges that, immediately after this phone call on September 23, 2020, Taylor, "acting individually, as an agent, servant, and employee of Defendant Telligent, decided, and/or recommended, that [Timbers'] employment be terminated." (*Id.* ¶ 26.) She then "drafted an Employee Disciplinary/Termination Form which contains false allegations of poor work performance by [Timbers]" and which indicated that he made verbal threats against another employee and demonstrated poor work performance. (*Id.* ¶¶ 26–27.) The same day, Taylor also drafted a Termination Notice, which Timbers received several days later. (*Id.* ¶ 28.) It indicated

3

that Timbers was terminated due to "his conduct over the past several months." (*Id.* ¶ 29 (alterations omitted).) Timbers alleges that he was "never disciplined or otherwise informed by Defendants during the course of his employment that there were any issues with his work performance at any time prior to his termination." (*Id.* ¶ 30.) Timbers avers that "[t]he false allegations/justifications provided by Defendants to legitimize Plaintiff's termination are pretexts" and that the true reason for his termination was either discrimination, retaliation, or both. (*Id.* ¶ 33.)

Timbers filed a Charge of Discrimination against Telligent with the EEOC on November 19, 2020 ("EEOC Charge") and was issued a right-to-sue letter on December 22, 2020. (*Id.* ¶ 9.) In the EEOC Charge, he alleges racial discrimination and retaliation. (Telligent Mot. Dismiss Mem. Supp. Ex. A, ECF No. 12-2.)[1] He states that he has been discriminated against due to his race and subjected to a hostile work environment and "otherwise [] harassed by" his supervisors, Valladares, Villegas, and Williams. (*Id.*) He explains that "on or around July 31, 2020, [he] was denied work opportunities which was tantamount to a de facto demotion and/or suspension without pay." (*Id.*) He further explains that he made internal complaints to Villegas and HR, in which he indicated that he believed he was being discriminated against due to his race and was planning to file charges with the EEOC. (*Id.*) He asserts that he received his notice of termination on

---

[1] The Court's consideration of this document does not convert Telligent's Motion to Dismiss into one for summary judgment. Timbers referenced the EEOC Charge in his Amended Complaint and the EEOC Charge itself was attached to Telligent's Motion to Dismiss. Timbers has not objected to its consideration. *See White v. Mortg. Dynamics, Inc.*, 528 F. Supp. 2d 576, 579 (D. Md. 2007) ("Here, Defendant has appended to its Motion, and Plaintiff has incorporated by reference, the Charge of Discrimination, and that document was not included in the attachments to Plaintiff's Complaint. As this document is integral to the Complaint and since Plaintiff has expressed no objection, the Court will consider this document in ruling on the Motion to Dismiss, thus not converting it to a Motion for Summary Judgment."). However, Telligent also attaches to its Reply business and payroll records. (ECF No. 18-1.) These are not appropriately considered on a Rule 12(b)(6) motion and the Court therefore declines to consider them at this stage.

September 23, 2020, which indicated that he was being terminated due to his conduct over the past several months—an explanation that he argues is simply pretext for discrimination or retaliation. (*Id.*)

Timbers brings five claims against Telligent and Taylor. He brings a Title VII racial discrimination claim against Telligent (Count I); a Title VII retaliation claim against Telligent (Count II); a 42 U.S.C. § 1981 discrimination claim against Telligent (Count III); a 42 U.S.C. § 1981 retaliation claim against Telligent (Count IV); and a 42 U.S.C. § 1981 retaliation claim against Taylor (Count V). (Am. Compl. ¶¶ 37–67.)

## *II.   Legal Standard*

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

## *III.   Analysis*

Timbers has sufficiently alleged that Telligent violated Title VII and § 1981, both with respect to his discrimination claims and with respect to his retaliation claims. Further, Timbers

5

has sufficiently alleged that Taylor violated § 1981. Telligent and Taylor's Motions to Dismiss will therefore be denied.

### A. *Telligent's Motion to Dismiss*

Telligent has moved to dismiss Timbers' claims of discrimination and retaliation brought against it under Title VII and § 1981. The Court will deny Telligent's Motion to Dismiss for the reasons explained below.

#### 1. *Title VII and Section 1981 Discrimination (Counts I and III)*

The Title VII and § 1981 discrimination claims against Telligent survive dismissal because Timbers has sufficiently alleged a discrimination claim and has sufficiently exhausted his administrative remedies. To withstand a motion to dismiss, the plaintiff must allege facts that "support a reasonable inference that the decisionmakers were motivated by bias." *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 586 (4th Cir. 2015) (emphasis omitted). A claim of discrimination under Title VII lacking direct evidence requires a plaintiff to demonstrate: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30 (2012). "In the employment context, courts analyze claims of racial discrimination brought under § 1981 according to the same requirements as those brought under Title VII of the Civil Rights Act of 1964." *Bowling v. Humanim, Inc.*, Civ. No. JKB-16-3298, 2017 WL 713862, at *2 (D. Md. Feb. 22, 2017) (citing *Gairola v. Va. Dept. of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985)).

In spite of Telligent's insistence that Timbers' discrimination claim is implausible, (*see* Telligent Mot. Dismiss Mem. Supp. at 4–13, ECF No. 12), the Court concludes that Timbers has

6

sufficiently alleged discrimination under Title VII and § 1981. Timbers has sufficiently alleged that he is a member of a protected class. He has also sufficiently alleged that he has suffered an adverse employment action, as both termination and reduced hours can constitute adverse employment actions. *See, e.g., Adams v. Upper Chesapeake Med. Ctr., Inc.*, Civ. No. AMD 08-346, 2009 WL 997103, at *4 (D. Md. Apr. 14, 2009) ("Adverse employment actions generally impact one's job title, salary, benefits, hours, or some other material aspect of one's employment."). Further, Timbers has sufficiently alleged that he had satisfactory job performance. He asserts that he "always performed his job duties in a competent manner and met Defendant Telligent's reasonable expectations." (Am. Compl. ¶ 12.) He also alleged that he was never disciplined or informed of any poor work performance, and that the first time he learned of any accusation of poor work performance was when he received his termination notice. (*Id.* ¶¶ 30–31.)

Timbers has also sufficiently alleged that he was treated differently than similarly situated employees outside of the protected class. "[O]nce a plaintiff bases her allegations entirely upon a comparison to an employee from a non-protected class, she must demonstrate that the comparator was similarly situated in all relevant respects." *Sillah v. Burwell*, 244 F. Supp. 3d 499, 512 (D. Md. 2017) (internal quotations and citations omitted). "Such a showing would include evidence that the employees dealt with the same supervisor, were subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (internal quotations, citations, and alterations omitted). Here, Timbers has alleged that he was treated differently than non-African American brick masons, all of whom were "supervised by the same three supervisors, Jose Valladares, Joseph Williams, and

7

Tanquilino Villegas[,] who supervised [Timbers], were subject to the same work standards as [Timbers] and were performing the same work and the same standard of work." (Am. Compl. ¶ 17.) This is sufficient to survive a motion to dismiss. Timbers has therefore plausibly alleged a racial discrimination claim under Title VII and § 1981.

Timbers has also exhausted his administrative remedies under Title VII. Filing a charge with the EEOC is a "precondition to the commencement of a Title VII action in court." *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1846 (2019). If "the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). However, "lawyers do not typically complete the administrative charges, and so courts construe them liberally." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (citing *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir.1988)).

Telligent argues that Timbers has failed to exhaust his administrative remedies, and goes so far as to argue that "there are no facts within the Charge that relate to the current allegations" and that "[n]othing within the Amended Complaint could logically have arisen out of the allegations contained in the Charge." (Telligent Mot. Dismiss Mem. Supp. at 9–11.) This is simply not true. This is not a situation where a plaintiff's "administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Chacko*, 429 F.3d at 506. Rather, the allegations in Timbers' Amended Complaint are reasonably related to the EEOC Charge and would have flowed from a reasonable investigation. Just as he does in his Amended Complaint, Timbers alleged in the EEOC Charge that he was discriminated against on the basis of race and retaliated against. (*See generally* Telligent Mot. Dismiss Mem. Supp. Ex. A.) He explains that "on or around July 31, 2020, [he] was denied work opportunities

8

which was tantamount to a de facto demotion and/or suspension without pay." (*Id.*) He also describes being terminated following complaints to Villegas and HR regarding discrimination. (*Id.*) Thus, Timbers has sufficiently exhausted his administrative remedies and Telligent cannot seriously claim that it was not on notice of Timbers' allegations based on the EEOC Charge. *See Sydnor v. Fairfax County*, 681 F.3d 591, 594 (4th Cir. 2012) (internal quotations and citations omitted) (explaining that "so long as a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, she may advance such claims in her subsequent civil suit").[2]

Therefore, the Court will not dismiss Timbers' Title VII claim based on a failure to exhaust his administrative remedies. Because Timbers has also pled sufficient facts to state a discrimination claim, the Court does not dismiss his Title VII and § 1981 discrimination claims against Telligent.

### 2. *Title VII and Section 1981 Retaliation (Counts II and IV)*

Telligent argues that Timbers has not sufficiently alleged a retaliation claim. (Telligent Mot. Dismiss Mem. Supp. at 13–20.) With respect to a Title VII or § 1981 retaliation claim, a plaintiff is required to allege that: "(1) []he engaged in a protected activity; (2) an adverse action was taken against h[im] by the Defendant; and (3) there was a causal connection between the first two elements." *Forgus v. Mattis*, 753 F. App'x 150, 154 (4th Cir. 2018); *see also Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 272 (4th Cir. 2015) (citing *Honor v. Booz–Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004)) (explaining that "elements of prima facie §

---

[2] It is true, as Telligent points out, that there are some variances between the EEOC Charge and the allegations in the Amended Complaint. For example, Timbers describes the unlawful discrimination in part as a "hostile work environment" in the EEOC Charge but does not bring claims based on a hostile work environment in his Amended Complaint. However, as the Fourth Circuit has explained, "we have sought to strike a balance between providing notice to employers and the EEOC on the one hand and ensuring plaintiffs are not tripped up over technicalities on the other." *Sydnor*, 681 F.3d at 594. The Court therefore will not grant Telligent's Motion to Dismiss on this basis.

1981 and Title VII retaliation claims are identical"). Timbers has sufficiently alleged retaliation claims against Telligent under Title VII and § 1981.

First, Timbers has sufficiently alleged that he was engaged in protected activity when he complained to Villegas and Taylor. Both formal and informal complaints alleging discrimination can constitute protected activity. *See Hooven-Lewis v. Caldera*, 249 F.3d 259, 273 (4th Cir. 2001). Further, discussing the possibility of filing an EEOC charge is also protected activity. *See Sharpe v. Prince George's Cnty. Gov't*, Civ. No. TDC-17-3799, 2021 WL 928177, at *17 (D. Md. Mar. 11, 2021).

The thrust of Telligent's argument is that Timbers was not engaged in protected activity because his complaints of discrimination were not sufficient to put Defendants on notice that he was complaining about conduct that violated Title VII or § 1981. (Telligent Mot. Dismiss Mem. Supp. at 13–16, 19–20.) The cases to which Telligent cites in support of this argument relate to instances where the employee did not complain that he or she was being discriminated against due to a protected characteristic. *See, e.g., McGruder v. Epilepsy Found. of Am., Inc.*, Civ. No. 11-CV-02310-AW, 2012 WL 832800, at *5 (D. Md. Mar. 9, 2012) (finding that a plaintiff did not engage in protected activity when her "e-mail ma[de] no reference to any discrimination [the p]laintiff believe[d] she may have suffered on the basis of either race or disability"); *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 701 (3d Cir. 1995) ("[Plaintiff's] letter to Human Resources complains about unfair treatment in general and expresses his dissatisfaction with the fact that someone else was awarded the position, but it does not specifically complain about age discrimination."); *McNair v. Computer Data Sys., Inc.*, 172 F.3d 863 (4th Cir. 1999) ("[Plaintiff] presented no evidence that the . . . letter to DOE officials contained even implicit or indirect opposition to racial or sexual discrimination by anyone"); *Sara Kaye Ruffner v. MD OMG EMP*

*LLC*, Civ. No. WDQ-11-1880, 2012 WL 3542019, at *4 (D. Md. Aug. 13, 2012) ("[Plaintiff] has not shown that her complaints alerted [defendants] that her complaints were based on race or age or other prohibited discrimination."). These cases are inapposite where, as here, Timbers has alleged that he made two internal complaints in which he indicated that he was being discriminated against due to his race, and further alleged that he had indicated that he was going to file EEOC charges on the same basis. (*See* Am. Compl. ¶¶ 20, 22 (alleging that he complained to Villegas on September 16, 2020, when he "indicated that he believed . . . that he was being discriminated against due to his race (African-American)," and that he complained to Taylor on September 23, 2020, when he "again reported his complaint of race discrimination and reduced hours or work being assigned to him").

Telligent also suggests that Timbers' belief that he was being discriminated against was not reasonable. Telligent's arguments in this respect seem to generally relate to its view that Timbers' discrimination claims are not meritorious. These arguments fail because "[i]f an employee has a reasonable belief that a Title VII violation 'is in progress,' an internal complaint is protected activity, even if a claim based on the underlying conduct would be unlikely to succeed." *Jones v. United Health Grp.*, Civ. No. JKB-17-3500, 2019 WL 1903668, at *12 (D. Md. Apr. 29, 2019), *aff'd sub nom. Jones v. UnitedHealth Grp., Inc.*, 802 F. App'x 780 (4th Cir. 2020) (citing *Boyer-Liberto*, 786 F.3d at 282).

Second, Timbers has sufficiently alleged that he suffered an adverse employment action when he was terminated, as termination is the quintessential adverse employment action. *See Strothers v. City of Laurel*, 895 F.3d 317, 328 (4th Cir. 2018) ("[I]t is patently obvious and undisputed that termination is a materially adverse action.").

Third, Timbers has sufficiently alleged a causal connection between the protected activity

11

and the adverse employment action. To demonstrate a causal connection at this stage, a plaintiff need only allege facts "supporting a 'reasonable inference' of causation." *Miller v. Md. Dep't of Nat. Res.*, 813 F. App'x 869, 878 (4th Cir. 2020) (citing *Iqbal*, 556 U.S. at 678). For temporal proximity alone to establish causation, the protected activity and adverse action must have occurred "very close" in time. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citation and quotations omitted) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close."). Here, Timbers alleged that he complained to Villegas on September 16, 2020, complained to Taylor on September 23, 2020, and received a termination letter that had been drafted on September 23, 2020 several days later. (Am. Compl. ¶¶ 20, 22, 28.) This temporal proximity of only a few days is clearly sufficient to support a reasonable inference of causation. *See, e.g., Foster v. Univ. of Md. E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015) ("[Plaintiff's] evidence of temporal proximity also tends to show causation: . . . she complained to [Human Resources] about perceived retaliation on September 21, 2007, and again on September 28, 2007, just a month before she was terminated.") (emphasis omitted).

Telligent argues that Timbers' complaints were simply a tactic to get more work and that Timbers did not subjectively believe that he was being discriminated against, as he made his complaints a few months after the alleged discrimination began. (Telligent Mot. Dismiss Mem. Supp. at 17.) However, this argument merely presents a factual dispute and is therefore inappropriate for a motion to dismiss, which merely tests the legal sufficiency of the complaint. *See King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (internal quotations and citations omitted) ("A Rule 12(b)(6) motion tests the sufficiency of a complaint; it does not, however,

resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). Taking the facts alleged in the Amended Complaint as true, Timbers has stated a claim for retaliation under Title VII and § 1981. The Court will therefore deny Telligent's Motion to Dismiss.

### B. *Taylor's Motion to Dismiss*

Taylor has moved to dismiss the § 1981 retaliation claim against her, arguing that (1) Timbers has failed to state a retaliation claim because he has failed to allege a causal connection between protected activity and an adverse employment action and (2) Timbers has failed to allege that Taylor had any supervisory role over his employment or authorized, directed, or participated in the retaliatory action. (Taylor Mot. Dismiss Mem. Supp. at 3–5, ECF No. 13.)

For the reasons discussed above, Timbers has sufficiently alleged a retaliation claim, including sufficiently alleging a causal connection between the protected activity and the adverse employment action. Timbers alleges that Taylor draft a termination letter and recommended or directed that he be terminated on the very same day that he complained of racial discrimination and threatened to filed an EEOC charge on that basis. (Am. Compl. ¶¶ 20, 22, 28.) As explained above, this temporal proximity is sufficient to support a reasonable inference of causation.

Further, "[i]ndividuals may be liable under § 1981 when they authorize, direct, or participate in a discriminatory act." *Brown v. Baltimore Police Dep't*, Civ. No. RDB-11-00136, 2011 WL 6415366, at *11 (D. Md. Dec. 21, 2011) (internal quotations and citations omitted). "To make out a claim for individual liability under § 1981, a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action and the claim must be predicated on the actor's personal involvement." *Hawthorne v. Va. State Univ.*, 568 F. App'x 203, 204–05 (4th Cir. 2014) (internal quotations and citations omitted). It is not true, as Taylor suggests,

13

that Timbers has not alleged that she authorized, directed, or participated in the retaliatory act. Timbers specifically alleged that, following his complaint of racial discrimination, Taylor "decided and/or recommended that [Timbers'] employment be terminated and drafted an Employee Disciplinary/Termination Form." (Am. Compl. ¶ 26.) Further, it is not necessary that Timbers establish that Taylor was his supervisor to allege a § 1981 claim. *See Evans v. Maryland Nat'l Cap. Parks & Plan. Comm'n*, Civ. No. TDC-19-2651, 2020 WL 6703718, at *7 (D. Md. Nov. 13, 2020) (citing *Al-Khazraji v. St. Francis Coll.*, 784 F.2d 505, 518 (3d Cir. 1986)) ("As to the § 1981 claim, it is not even necessary to establish that [defendants] were [plaintiff's] supervisors in order to establish liability against them."). Taylor's arguments for dismissal fail and the Court will therefore deny Taylor's Motion to Dismiss.

### IV. Conclusion

For the foregoing reasons, Defendants' Motions to Dismiss the Complaint (ECF Nos. 8, 9) will be denied as moot and Defendants' Motions to Dismiss the Amended Complaint (ECF Nos. 12, 13) will be denied.

DATED this 22 day of March, 2022

BY THE COURT:

_____
James K. Bredar
Chief Judge