UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

**DAVID TIMBERS**
    *Plaintiff*,
v.

**TELLIGENT MASONRY, LLC**
**d/b/a TELLIGENT MASONRY**
**CONSTRUCTION,** *et al*.

    *Defendants.*

Civil Action No.  8:21-cv-00293-JKB~~PX~~

## SECOND AMENDED COMPLAINT & JURY DEMAND

Plaintiff David Timbers ("Mr. Timbers" or "Plaintiff"), by and through his attorneys, James M. Ray, II and Ray Legal Group, LLC, hereby brings this action against Defendants Telligent Masonry, LLC d/b/a Telligent Masonry Construction ("Defendant Telligent") and Tia Taylor and alleges:

### NATURE OF THE ACTION

1. The Plaintiff brings this civil action against Defendant Telligent seeking damages and/or other legal relief for Defendant Telligent's violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, and against Defendants Telligent and Tia Taylor seeking damages and/or other legal relief for Defendants' violations of 42 U.S.C. § 1981.

### THE PARTIES

2. Plaintiff David Timbers is and was at all times relevant a citizen of Falls Church, Virginia.

3. Defendant Telligent is a Maryland corporation with its principal office located in Rockville, Maryland.

4. Defendant Tia Taylor is a citizen of Montgomery County, Maryland. Defendant Tia Taylor is the current Human Resources ("HR") Specialist for Defendant Telligent.

## JURISDICTION & VENUE

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331, § 1332, § 1343(a)(4), and/or § 1367 and 42 U.S.C. § 2000e-5.

6. The Title VII causes of action stated herein are authorized by 42 U.S.C. § 2000e. Section 1981a(c) authorizes a jury trial for the Plaintiff's Title VII claims.

7. The 42 U.S.C. § 1981 causes of action stated herein are authorized by that statute. The Plaintiff is entitled to a jury trial on his § 1981 claims.

8. Venue is proper in this District under 28 U.S.C. § 1391, where a substantial part of the events giving rise to Plaintiff's claims occurred.

9. On or about November 19, 2020, the Plaintiff timely filed a charge with the EEOC (Charge No. 570-2020-02700) alleging race discrimination, racially hostile work environment and retaliation against Defendant Telligent. The EEOC issued a "right to sue" letter to the Plaintiff relating to this charge on December 22, 2020.

10. Plaintiff has complied with all conditions precedent, administrative requirements, and/or legal preconditions otherwise to properly file and pursue his civil action. This civil action is lawfully filed in this Court. All conditions precedent have occurred or been performed.

## FACTS COMMON TO ALL COUNTS

11. The Plaintiff began his employment for Defendant Telligent in March of 2019 as a Brick Mason.

12. During his employment with Defendant Telligent, the Plaintiff always performed his job duties in a competent manner and met Defendant Telligent's reasonable expectations.

13. During his employment, the Plaintiff has been discriminated against due to his race (African American) from August 21 ~~July 31,~~, 2020 through his termination on September 23, 2020 by his ~~three (3)~~ immediate supervisor~~s~~, Jose Valladares, and by Telligent general superintendent, Joseph Williams, ~~and~~ Tranquilino Villegas.

14. In addition, Defendants, including Defendant Tia Taylor and Defendant Telligent, including but not limited to its agent, servant, and employees Michael Pappas (Vice President), and Jose Valladares, retaliated against the Plaintiff by terminating Plaintiff's employment on the same day, September 23, 2020, that he made an internal complaint of race discrimination with Telligent's Human Resources department (within hours of the complaint).

15. Beginning after August 21, ~~July 31,~~ 2020, the Plaintiff was denied work opportunities and was given reduced hours of work by all three of his supervisors.

16. Specifically, Plaintiff had been working on Defendant Telligent's worksite at Faraday Park East ("Faraday") in Reston, Virginia. When work at the Faraday site ~~in Reston, Virginia~~ was temporarily halted on or about Friday, August 21, ~~July 31,~~ 2020, Plaintiff, ~~and~~ and his brother, Albert Timbers, who is also African-American and a Brick Mason, and six (6) other Hispanic Brick Masons (Carlos Hernandez-Men, Carlos Menendez, Carlos Molina, Hugo Juarez, Jose Hernandez, and Marlon Ramos) were told by the Faraday supervisor, Wilber Bonilla, to go to Prince William High School site in Gainesville, Virginia, where Defendant Telligent was involved in the construction of a high school. When Plaintiff and his brother arrived at the Gainesville, Virginia site, they were told by supervisor Jose Valladares that Defendant Telligent did not have any work for them at that location. However, prior to Plaintiff and his brother leaving, ~~a~~ the group of fellow Brick Masons, all of whom were Hispanic and employees of Defendant Telligent (including Carlos Hernandez-Men, Carlos Menendez, Carlos Molina, Hugo Juarez, Jose

3

Hernandez, and Marlon Ramos) , arrived at the Gainesville, Virginia work site and were put to work.  Defendant Telligent and supervisor Jose Valladares begrudgingly had Plaintiff and his brother work at the site for the day.  At the end of the day, Defendant Telligent ~~and~~ by and through its employee supervisors Jose Valladares and Jose Luis Penado told Plaintiff and his brother not to return to the Gainesville, Virginia work site and, if they did return, ~~he~~ they would not be assigned ~~them~~ any work.  The Hispanic Brick Masons were allowed to continue to work at the Prince William High School Gainesville location from August 24, 2020 through September 11, 2020 while those work opportunities were denied to Plaintiff and his brother (both African American).

17.     Moreover, despite being told that masonry construction was being halted on the Faraday, Reston project, Plaintiff later learned that construction was not halted and Hispanic Brick Masons were allowed to continue to work that project from August 20, 2020 – September 11, 2020 while those opportunities were being denied to Plaintiff and his brother (including Hispanic Brick Mason Carlos Molina who worked at the Faraday, Reston site from August 27, 2020 until September 11, 2020 and Manuel Bautisa-Lopez who was allowed to continuously work at Faraday from August 20, 2020 until September 11, 2020 when Plaintiff and his brother were denied those opportunities.

18.     After work on Friday, August 21, 2020, the Plaintiff called Telligent's main office number to speak with someone regarding the lack of work and to report the comments made to him by Jose Luis-Penado/Jose Valladares and talked with an induvial named "Joe," who the Plaintiff later learned was Joe Williams.  Mr. Williams informed Plaintiff during this call that Plaintiff was being refused work because he got into a physical altercation with another employee, which was not true. Mr. Timbers told Joe Williams that black employees (including himself and his brother Albert) were being denied work at the Prince William High School job site.

4

19. On August 24, 2020, the Plaintiff called Mr. Tranquilino Villegas to see where he should report to work. Mr. Villegas did not answer any of the Plaintiff's calls and the Plaintiff did not leave a message. Hispanic Brick Masons were allowed to work during this time period while Plaintiff and his brother were being denied work.

~~16.~~ On August 26, 2020, the Plaintiff called Mr. Tranquilino Villegas in the morning approximately between 8:30 a.m. – 9:00 a.m. Mr. Timbers spoke briefly with Mr. Villegas during this 1 to 3 minutes telephone call about lack of work generally and being refused work at the Prince Williams High School job. Mr. Villegas indicated that he would check around for other work and call Mr. Timbers back. On August 27 and 28, 2020, the Plaintiff made several additional calls to Mr. Villegas; however, Mr. Villegas did not answer the Plaintiff's calls or call the Plaintiff back. Hispanic Brick Masons were allowed to work during this time period while Plaintiff and his brother were being denied work.

20.

~~17.~~21. Similarly situated Brick Masons, who were non-African American, were allowed to continue working, including working at the Gainesville, Virginia site and the Faraday, Reston site, and were not denied work opportunities like the Plaintiff. ~~and were not assigned reduced hours of work.~~ The similarly-situated non-African American Brick Masons were supervised by ~~the same three supervisors,~~ Jose Valladares ~~, Joseph Williams,~~ and Tranquilino Villegas, who supervised the Plaintiff, were subject to the same work standards as the Plaintiff and were performing the same work and the same standard of work as Brick Masons as the Plaintiff performed. No differentiating or mitigating circumstances exist that justify Defendant Telligent's more favorable treatment of these non-African American Brick Masons in comparison to

5

Defendant Telligent's less favorable treatment of the Plaintiff, other than their status as non-African Americans.

22. Plaintiff was not assigned any work for several days after the August 21~~July 31,~~, 2020 incident at the Gainesville, Virginia site nor was the Plaintiff assigned any work at the Faraday site, although Hispanic Brick Masons continued to work at both sites. ~~Thereafter, Plaintiff was only given a reduced number of hours of work, less than the Plaintiff had been working prior to July 31, 2020, while non-African-American Brick Masons continued to work their regular hours. No explanation was given by Defendants for Plaintiff's reduction in work hours and work opportunities that started after July 31, 2020, and lasted until his termination on September 23, 2020. The reduction in Plaintiff's work hours was not due to any business justification or circumstances on the part of Defendant Telligent, as other non-African American Brick Masons continued to work their regular hours.~~

23. At some time between September 10 and September 13, 2020, the Plaintiff was informed by the Faraday supervisor Mr. Bonilla that the Plaintiff should return to the Faraday site on September 14, 2020. The Plaintiff worked at the Faraday site on September 14, 2020 and a partial day on September 15, 2020. Work was again stopped at the Faraday site due to a structural problem with windows on the site. On September 15, 2020 at approximately 7:30 p.m., Mr. Bonilla called the Plaintiff and told the Plaintiff to report the following day (September 16, 2020) to the Prince William High School job site again. The Plaintiff explained to Mr. Bonilla during this telephone call that Jose Valladares already had told Plaintiff that the Plaintiff would be refused work if he returned to the Prince William High School site. Mr. Bonilla informed Plaintiff that the Plaintiff would need to follow up with Mr. Villegas regarding this issue.

6

18.24.  The Plaintiff did not travel to the Prince William High School site because he knew that the trip would be a waste of time and Mr. Valladares would not allow the Plaintiff to work at the site.

19.    On September 16, 2020, the Plaintiff called As a result of being denied the ability to continue working regular (non-reduced) hours for Defendant Telligent (without any explanation or justification), Plaintiff made an internal complaint with his immediate supervisor, Tranquilino Villegas.  During this telephone call, the Plaintiff  questioned the decision to send the Plaintiff back to the Prince William High School job site and reminded Mr. Villages that Jose Valladares was refusing work to the Plaintiff and his brother (black employees) while allowing non-black Hispanic employees to continue to work. (General Superintendent), on or about September 16, 2020.

25.

26.    The Plaintiff again called Mr. VillegasJose Valladares on September 18, 2020 and told Mr. Valladares that Telligent he was discriminating against the Plaintiff and his brother by refusing work to black employees but giving work to white and Hispanic brick masons. Mr. Timbers also threatened to file a charge of discrimination because of this discriminatory conduct at this time.

20.    During his complaint to Mr. Villegas on September 16, 2020, the Plaintiff also indicated that he believed, based on his experience of racial discrimination on July 31, 2020 at the Gainesville, Virginia High School site and his being assigned reduced hours thereafter, that he was being discriminated against due to his race (African American).  He further stated that, if he was not returned to work at regular (non-reduced) hours shortly, he would be filing a charge with the Equal Employment Opportunity Commission ("EEOC").

7

21.27.  Because Plaintiff was not assigned any ~~regular (non-reduced) hours of~~ work by September 22, 2020, Plaintiff called Telligent's main office~~c~~ number to complain about Mr. Valladares refusing work to both he and his brother (both black employees) but allowing Hispanic workers to continue working. He was told by the receptionist that the Plaintiff would need to talk with the human resources ("HR") department. ~~ontacted Defendant Telligent's HR department on September 22, 2020.~~ However, the Plaintiff was told that no one was available in Defendant Telligent's HR department to take Plaintiff's call so the receptionist took the Plaintiff's name and telephone number.~~.~~

22.28.  ~~As a result, Plaintiff again contacted Defendant Telligent's HR department on September 23, 2020. This time the Plaintiff was able to speak with~~ Defendant Tia Taylor (HR Specialist for Defendant Telligent) called the Plaintiff during the early morning hours on ~~on~~ September 23, 2020.

23.29.  During this conversation, Plaintiff again reported his complaint of race discrimination and lack of work~~reduced hours of work being assigned to him~~.~~.~~ Plaintiff also informed Defendant Tia Taylor during this telephone conversation that he would be filing a charge of race discrimination with the EEOC.  Ms. Taylor told the Plaintiff that she would open an investigation into the Plaintiff's complaints.

24.30.  Defendant Tia Taylor "documented" Plaintiff's complaint of race discrimination, and opened an alleged investigation into his claims of race discrimination.

31.  Defendant Tia Taylor's alleged investigation on September 23, 2020 lasted only a few hours.

25.32.  The same day, September 23, 2020 at 9:29 a.m., Tia Taylor forwarded an "employee investigation report" to Mr. Villegas, Michael Pappas, Mr. Valladares, Petra G. Botha

8

and Chris M. Pappas with the request "[i]f you have any other recommendations to eradicate this issue other than the one I provided, please let me know." Mr. Valladares responded a few minutes later, stating "10-4. Please send to all the fore man not hire he's [his] family timber because all of them are troublemaker[.] Been in jail for a long time[.] That's why they are like that bad Attitude." Tia Taylor replied "Yes, that is correct. I am drafting the termination letter right now." Mr. Pappas then promptly at 9:35 a.m. emailed Ms. Taylor and Tranquilino Villegas and instructed them to terminate Mr. Timbers' employment with Telligent.

33. Upon information and belief, immediately following her telephone conversation with Plaintiff on September 23, 2020, Defendant Tia Taylor, acting individually, as an agent, servant, and employee of Defendant Telligent, decided, and/or recommended, that the Plaintiff's employment be terminated and drafted an Employee Disciplinary/Termination Form which contained false allegations of poor work performance by Plaintiff.

26.34. Alternatively, Defendant Telligent, by and through their agents, servants, and employees Michael Pappas, Tranquilino Villegas, and Jose Valladares instructed Ms. Taylor to terminate Plaintiff's employment on September 23, 2020 at 9:35 a.m. (just an hour or so after Plaintiff filed an internal complaint of race discrimination with the Company).

27.35. The Employee Disciplinary/Termination Form that was drafted on September 23, 2020 falsely alleged that the Plaintiff had previously made verbal threats against another employee (at some undisclosed time in the past) and otherwise demonstrated "poor work performance" during the course of his employment with Defendant Telligent.

28.36. In addition, Defendant Tia Taylor, acting as an agent, servant, and employee of Defendant Telligent, and after having decided to terminate, and/or to recommend to terminate, the

Plaintiff's employment, drafted a Termination Notice on September 23, 2020 that was mailed to the Plaintiff, which was not received by Plaintiff until several days later.

29.37.  The Termination Notice falsely alleged that Plaintiff was being terminated "due to [his] conduct over the past several months…."

30.38.  Plaintiff was never disciplined or otherwise informed by Defendants during the course of his employment that there were any issues with his work performance at any time prior to his termination.

31.39.  In fact, the first time Plaintiff learned that (i) he was being accused of poor work performance and, (ii) that he was being accused of engaging in inappropriate conduct, was not until the end of September 2020, when he received his termination paperwork in the mail—immediately after he internally complained of race discrimination and indicated that he would be filing a charge of discrimination with the EEOC to Defendants on September 23, 2020.

32.40.  At all times relevant, Plaintiff denies the false allegations that his work performance was poor, and/or that he verbally threatened another employee during the course of his employment with Defendant Telligent. Plaintiff has no prior documented disciplinary history with Defendant Telligent.

33.41.  The false allegations/justifications provided by Defendants to legitimize Plaintiff's termination are pretexts for Defendants' true motivation for terminating the Plaintiff's employment: to discriminate against the Plaintiff due to his race (African American), and/or to retaliate against the Plaintiff for engaging in protected activity *i.e.,* filing internal complaints of race discrimination within the company and stating his intent to file a charge of discrimination with the EEOC.  Defendant Telligent never informed Plaintiff, prior to the claims made in the September 23, 2020 Termination Notice, that Plaintiff had engaged in any inappropriate conduct.

34.42.  Despite being aware of the constant discrimination and retaliation, Defendants failed to take any action to stop the discrimination/retaliation.

35.43.  The Plaintiff has been unlawfully discriminated against due to his race (African American) in violation of Title VII of the Civil Rights Act of 1964, as amended.

36.44.  The Plaintiff has been unlawfully retaliated against (*i.e.* terminated) for lodging a complaint of racial discrimination against his direct supervisors.

### COUNT I
### (Violation of Title VII – Racial Discrimination)
### (Against Defendant Telligent Masonry, LLC)

37.45.  The Plaintiff incorporates the preceding allegations as if set forth fully herein.

38.46.  At all relevant times, Plaintiff was an "employee" of the Defendant under 42 U.S.C. § 2000e(f).

39.47.  At all relevant times, Defendant Telligent was an "employer" of the Plaintiff under 42 U.S.C. § 2000e(b).

40.48.  Under § 2000e-2(a), "[i]t shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

41.49.  Plaintiff suffered intentional discrimination because of his race in violation of 42 U.S.C. § 2000e-2(a)(1) and (2).

11

42.50.  The Plaintiff suffered adverse employment actions because of his race, including not being allowed to continue to work at the Gainesville, Virginia site and the Faraday Reston site and , having his hours reduced, being denied the opportunity for continued regular work by Defendantss, and being terminated on September 23, 2020.

43.51.  Similarly situated Brick Masons, who were non-African American, were allowed to continue working at the Gainesville, Virginia site and the Faraday Reston site, did not have their hours reduced, and were not denied continued work opportunities like the Plaintiff establishing inferences of discriminatory intent toward the Plaintiff.  Alternatively, the Plaintiff, who is African-American, was treated differently than other similarly situated Brick Masons, who were Caucasian and/or Hispanic, and performed functions similar to those performed by the Plaintiff.

44.52.  Plaintiff was discriminated against with respect to the terms and conditions of his employment with Defendant Telligent Masonry, LLC as a direct result of his race.

53.     But for the Plaintiff's race (African-American) the Plaintiff would not have been discriminated against and would not have suffered adverse employment actions.

45.54.  Plaintiff's race (African-American) was a motivating factor in Defendant Telligent Masonry, LLC's decision to discriminate against Plaintiff (deny work opportunities), in addition, Plaintiff's race (African-American) was a motivating factor in Defendant Telligent Masonry, LLC's decision to terminate the Plaintiff.

46.55.  As a direct and proximate result of Defendant Telligent's conduct, Plaintiff has suffered substantial pecuniary losses, severe humiliation, mental anguish, and pain and suffering.

**COUNT II**
**(Violation of Title VII - Retaliation)**
**(Against Defendant Telligent Masonry, LLC)**

47.56.  The Plaintiff incorporates the preceding allegations as if set forth fully herein.

48.57.  Under § 2000e-3(a), "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

49.58.  Plaintiff suffered intentional retaliatory discrimination because of his race in violation of 42 U.S.C. § 2000e-3(a).  Plaintiff suffered retaliation by Defendant Telligent Masonry, LLC because of his race and/or because the Plaintiff opposed, made complaints about, and pursued remedies for racial discrimination, including submitting complaints of racial discrimination on September 16, 2020 and September 18, 2020, and September 23, 2020 and for stating his intent to file a charge of discrimination with the EEOC on September 1618, 2020 and September 23, 2020.

50.59.  The retaliatory discrimination was performed by Defendant Telligent, acting directly through Michael Pappas, Jose Valladares, Joseph Williams, Tranquilino Villegas, and/or Defendant Tia Taylor or by others acting under those employee's' direction.

51.60.  But for the Plaintiff's race (African-American), and but for the Plaintiff engaging in protected activity (internally reporting race discrimination to his Employer and stating his intent to file a charge of discrimination with the EEOC), the Plaintiff would not have suffered this retaliation, and would not have suffered adverse employment actions including his termination.

52.61.  As a direct and proximate result of Defendant Telligent's conduct, Plaintiff has suffered substantial pecuniary losses, severe humiliation, mental anguish, and pain and suffering.

**COUNT III**
**(Violation of 24 42 U.S.C. § 1981 – Discrimination)**
**(Against Defendant Telligent Masonry, LLC)**

53.62.  The Plaintiff incorporates the preceding allegations as if set forth herein.

54.63.  The Plaintiff suffered intentional discrimination by Defendant Telligent Masonry, LLC because of the Plaintiff's race.

55.64.  The discriminatory acts committed by Defendant Telligent, including through its agents, servants, and employees were intentional and violate Section 1981.

65.  But for the Plaintiff's race (African American), the Plaintiff would not have been discriminated against by Defendant Telligent Masonry, LLC, and would not have suffered adverse employment actions (including termination).

56.66.  Plaintiff's race (African-American) was a motivating factor in Defendant Telligent Masonry, LLC's decision to discriminate against Plaintiff (deny work opportunities), in addition, Plaintiff's race (African-American) was a motivating factor in Defendant Telligent Masonry, LLC's decision to terminate the Plaintiff.

57.67.  As a direct and proximate result of Defendant Telligent's conduct, Plaintiff has suffered substantial pecuniary losses, severe humiliation, mental anguish, and pain and suffering.

**COUNT IV**
**(Violation of 24 42 U.S.C. § 1981 – Retaliation)**
**(Against Defendant Telligent Masonry, LLC)**

58.68.  The Plaintiff incorporates the preceding allegations as if set forth fully herein.

59.69.  Plaintiff suffered retaliation by Defendant Telligent Masonry, LLC because of his race and/or because the Plaintiff opposed, made complaints about, and pursued remedies for racial discrimination, including submitting complaints of racial discrimination on September 16, 2020, September 18, 2020 and September 23, 2020 and for stating his intent to file a charge of discrimination with the EEOC on September 18, 2020 and September 23, 2020.

60.70.  The discriminatory/retaliatory acts by Defendant Telligent Masonry, LLC, including through its agents, servants, and employees were intentional and violate Section 1981.

61.71.  But for the Plaintiff's race (African-American), and but for the Plaintiff engaging in protected activity (internally reporting race discrimination to his Employer and stating his intent to file a charge of discrimination with the EEOC), the Plaintiff would not have suffered this retaliation, and would not have suffered adverse employment actions including his termination.

62.72.  As a direct and proximate result of Defendant's conduct, Plaintiff has suffered substantial pecuniary losses, severe humiliation, mental anguish, and pain and suffering.

**COUNT V**
**(Violation of 24 42 U.S.C. § 1981 – Retaliation)**
**(Against Defendant Tia Taylor)**

63.73.  The Plaintiff incorporates the preceding allegations as if set forth fully herein.

64.74.  Plaintiff suffered retaliation by Defendant Tia Taylor because of his race and/or because the Plaintiff opposed, made complaints about, and pursued remedies for racial discrimination, including submitting complaints of racial discrimination on September 16, 2020, September 18, 2020 and September 23, 2020, and for stating his intent to file a charge of discrimination with the EEOC on September 18 6, 2020 and on September 23, 2020.

65.75.  The discriminatory/retaliatory acts by Defendant Tia Taylor, and others acting under her direction, were intentional and violate Section 1981.

66.76.  But for the Plaintiff's race (African-American), and but for the Plaintiff engaging in protected activity (internally reporting race discrimination to his Employer and stating his intent to file a charge of discrimination with the EEOC), the Plaintiff would not have suffered this retaliation, and would not have suffered adverse employment actions including his termination.

67.77.  As a direct and proximate result of Defendant Tia Taylor's conduct, Plaintiff has suffered substantial pecuniary losses, severe humiliation, mental anguish, and pain and suffering.

WHEREFORE, Plaintiff David Timbers hereby demands judgment against Defendants Telligent Masonry LLC and Tia Taylor for compensatory (or ~~actual) damages, including lost wages, salary, employment benefits, or other compensation denied or lost (or any actual monetary losses sustained by the employee as a direct result of the violation(s) complained of herein), as well as~~ non-economic damages, in an amount to be proven and determined at trial; punitive (or exemplary) damages as allowed by law~~; reinstatement (and/or front pay in lieu of reinstatement in an amount to be proven and determined at trial);~~; interest as allowed by law; for such legal and/or equitable relief as may be appropriate, including ~~back pay, full restoration of benefits, and/or promotion;~~ an award of attorneys' fees, expert witness fees, other litigation expenses, and costs of the action; and such other and further relief as the nature of Plaintiff's cause requires.

      Respectfully Submitted,

      **RAY LEGAL GROUP, LLC**


      By:   /s/ James M. Ray
      James M. Ray, II (#012773)
      jim.ray@raylegalgroup.com
      8720 Georgia Avenue, Suite 904~~803~~
      Silver Spring, Maryland 20910
      Phone: (301) 755-5656
      Fax:    (301) 755-5627

      *Attorneys For Plaintiff*


## **DEMAND FOR JURY TRIAL**

The Plaintiff requests a trial by jury on all issues raised herein.

                        /s/ James M. Ray, II
                       James M. Ray, II (#012773)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this ____ ~~13th~~ day of July 2022 ~~April 2021~~, a copy of the foregoing Second Amended Complaint & Jury Demand was served electronically through the Court's CM/ECF system on:

Brandon N. Mourges, Esq.
Thomas J. DeGennaro, Esq
Crepeau Mourges
1344 Ashton Road, Suite 110
Hanover, MD 21076
~~brandon@usataxlaw.com~~

*Counsel for Defendant Telligent Masonry, LLC*


Imoh E. Akpan, Esq.
John K. Archibald, Esq.
Alana R. Glover, Esq.
GOLDBERG SEGALLA LLP
111 South Calvert Street, Suite 2000
Baltimore, Maryland 21202
~~Sarah S. Lemmert, Esq.~~

~~Franklin & Prokopik, P.C.~~
~~Two North Charles Street, Suite 600~~
~~Baltimore, Maryland 21201~~
~~slemmert@fandpnet.com~~

*Counsel for Defendant Tia Taylor*

                                              /s/ James M. Ray, II
                                        James M. Ray, II (#012773)