# EXHIBIT 1

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

**DAVID TIMBERS**                              \*

      **Plaintiff,**                          \*

**v.**                                         \*          **Civ. No. JKB-21-00293**

**TELLIGENT MASONRY, LLC,** *et al.*           \*

      **Defendants.**                       \*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### <u>DEFENDANT TELLIGENT MASONRY, LLC'S</u>
### <u>ANSWERS TO PLAINTIFF'S INTERROGATORIES</u>

Defendant, Telligent Masonry, LLC ("Telligent"), by its undersigned attorneys, answers the Interrogatories propounded by the Plaintiff, David Timbers, as follows.

**<u>INTERROGATORY NO. 1</u>**: **Identify all persons who are likely to have personal knowledge of any fact alleged in the complaint or in your answer to the complaint, and state the subject matter of the personal knowledge possessed by each such person.**

**<u>ANSWER TO INTERROGATORY NO. 1</u>**:   Jose Valladares ("Mr. Valladares"), 2273 Research Blvd, Rockville, MD 20850, (202) 359-2018. Mr. Valladares is a current Telligent employee and was a foreman of Plaintiff and has personal knowledge of the following: Plaintiff was not a quality mason. Plaintiff's work frequently had to be torn down and redone. Mr. Valladares told Plaintiff this and that Plaintiff needed to do better. Plaintiff would tell Mr. Valladares he would do better, but his work did not improve. Plaintiff and his family members (brother and cousin) were troublemakers. Plaintiff's brother was fired because he hit another mason. Plaintiff's cousin was fired for a different reason. Plaintiff would constantly smell like

alcohol and/or appear to be under the influence of alcohol. Mr. Valladares would tell Plaintiff this needs to stop. Plaintiff would tell Mr. Valladares it would stop, but it did not. On one occasion, Plaintiff was sleeping on a job site because the police were looking for him.

Telligent's foremen, including Mr. Valladares, on occasions denied Plaintiff work because of the issues identified above, including the quality of his work being poor. In response, Plaintiff would show up to other jobsites behind their backs and attempt to work for other foremen.

After Mr. Valladares denied Plaintiff work, Plaintiff called him and threatened to harm him.

Tranquilino Villegas ("Mr. Villegas"), 2273 Research Blvd., Rockville, MD 20850, (202) 359-1192. Mr. Villegas is the general superintendent of Telligent and has personal knowledge of the following: as general superintendent, Mr. Villegas oversees the superintendents, foremen, and masons, like Plaintiff, of which there are hundreds at any given time. Mr. Villegas expects masons to do a quality job, show up on time, and follow directions. Other than receiving an email regarding the Plaintiff's termination, Mr. Villegas does not recall his involvement, if any, in Plaintiff's termination. Mr. Villegas receives numerous phone calls from masons on a daily basis regarding various issues. If they are issues that should be handled by the mason's foremen, such as lack of work, he directs the mason to address the issue with their foremen. If the issue is more substantial and requires the intervention of someone other than a foreman, such as a complaint of racial discrimination, he takes the appropriate action.

A review of Mr. Villegas' phone records from August 30, 2020 to October 1, 2020, which have been produced with Telligent's Response to Plaintiff's Requests for Production of Documents, indicate Plaintiff, from the phone number (571) 326-9984, called him twice on

[2]

September 16, 2020. Both phone calls were less than a minute long. It is possible that Mr. Villegas did not pick up either or both of these calls. In any event, Mr. Villegas has no recollection of a conversation with Plaintiff regarding lack of work and/or racial discrimination. It is possible that a conversation regarding lack of work occurred. If it did, Mr. Villegas would have directed the Plaintiff to address the issue with his foreman. However, Mr. Villegas is certain that a conversation regarding racial discrimination did not occur, as he would remember such a conversation and would have taken the appropriate action to address the issue.

Kenneth Fisher ("Mr. Fisher"), (202) 597-0945, is a former Telligent employee. Mr. Fisher was Plaintiff's first supervisor. Upon information and belief, Mr. Fisher has personal knowledge of the following: Plaintiff would constantly miss days of work. Plaintiff's work was not good and often had to be redone. In 2019, Plaintiff submitted a false claim for workers' compensation benefits. Specifically, Plaintiff and Mr. Fisher were working on a government site that required a badge for entry. Their badges were turned in at the end of each day. At the end of one day, Mr. Fisher observed Plaintiff submit his badge and get in a car. The next day, Plaintiff told Mr. Fisher that at the end of the day after everyone left, Plaintiff went back to the jobsite to retrieve something and fell on a scaffold and injured himself. This would not have been possible, as a badge was required to enter the jobsite and Plaintiff turned his in for the day.

Niesha Williams ("Ms. Williams"), 2273 Research Blvd, Rockville, MD 20850, (202) 669-0391, is a Telligent employee and another foreman that Plaintiff worked under. Upon information and belief, Ms. Williams has personal knowledge of the following: Timeliness was a major issue for Plaintiff. Plaintiff frequently did not show up to work sites on time. Timeliness is an important

quality for masons to have. On one occasion, Plaintiff did not show up to a job site where he was expected to work for three consecutive days. When he did show up, Ms. Williams denied Plaintiff work.

The quality of Plaintiff's work was another issue. On one occasion, Ms. Williams took pictures of this work. These pictures have been produced in Telligent's Response to Plaintiff's Requests for Production of Documents.

On one occasion, an elderly couple showed up to a secure jobsite to pick up Plaintiff's paycheck. The elderly couple explained to Ms. Williams that Plaintiff had promised his paycheck to them as payment. It became clear to Ms. Williams that Plaintiff had scammed this elderly couple.


Brionna Prater ("Ms. Prater"), (301) 919-1791, is a former Telligent employee. Ms. Prater has personal knowledge of the following: Ms. Prater worked as an administrative assistant and receptionist for Telligent. Ms. Prater also sometimes worked in the accounting department. Ms. Prater recalls Plaintiff calling Telligent's office when she was working as an administrative assistant and/or receptionist on a few occasions. Plaintiff was always complaining about something and was unpleasant, disgruntled, rude, and demanding. On one occasion, Plaintiff told her he would be missing work for a few days because of transportation issues. On another occasion, Plaintiff called demanding a paycheck that he had not yet received. On another occasion, Plaintiff called and claimed Mr. Valladares was not allowing Plaintiff to work and that Plaintiff doesn't play games and if Mr. Valladares continued to deny him work Plaintiff would go back to the job site and whoop his ass. Ms. Prater recalls sending an email to Tia Taylor about this and telling two other Telligent employees, Ricardo Sanchez and Michelle Mena, about this.

[4]

Joe Williams ("Mr. Williams"), 2273 Research Blvd., Rockville, MD 20850, (202) 655-4610, is a Senior Project Manager with Telligent. Upon information and belief, Mr. Williams has personal knowledge of the following: Mr. Williams recalls speaking with Plaintiff on one occasion regarding Mr. Valladares not allowing Plaintiff to work. During that call, Plaintiff did not say he was being discriminated against.

Tia Taylor ("Ms. Taylor") is a former Human Resources Specialist of Telligent. Upon information and belief, Ms. Taylor has personal knowledge of the following. Plaintiff called the office to speak with Human Resources regarding Plaintiff not being assigned work. Ms. Taylor was not available and Ms. Prater took the call. Plaintiff told Ms. Prater that if Mr. Valladares does not put Plaintiff on the schedule Plaintiff was going to go to the job site and beat Mr. Valladares' ass. Ms. Taylor called Plaintiff the next day to discuss Plaintiffs' complaint of lack of work and allegation of racial discrimination. She then opened an investigation of Plaintiffs' complaint and allegation. The specifics of Ms. Taylor's investigation are contained within Ms. Taylor's Position Statement, which has been produced in Telligent's Response to Plaintiff's Requests for Production of Documents. Ms. Taylor's investigation revealed that Plaintiff had violated several company policies and consistently failed to meet Telligent's expectations for masons. Due to the threats of violence Plaintiff made, Ms. Taylor recommended that Plaintiff be terminated. Due to safety concerns, Plaintiffs' Termination Notice and last paycheck was mailed to Plaintiff. The Termination Notice is contained within Telligent's Response to Plaintiff's Requests for Production of Documents. As Ms. Taylor is a party to this matter, additional information regarding the personal knowledge she has can be obtained by contacting her through her attorney.

[5]

Ricardo Sanchez ("Mr. Sanchez") is an accounting employee of Telligent. Upon information and belief, Mr. Sanchez has personal knowledge of the following: on one occasion, Ms. Prater told Mr. Sanchez about a phone call that Ms. Prater received from Plaintiff wherein Plaintiff made threats of violence.

Michelle Mena ("Ms. Mena") is an accounting employee of Telligent. Upon information and belief, Ms. Mena has personal knowledge of the following: on one occasion, Ms. Prater told Ms. Mena about a phone call that Ms. Prater received from Plaintiff wherein Plaintiff made threats of violence.

Wilber Bonilla ("Mr. Bonilla") is a former Telligent foreman who Plaintiff worked under during 2020. Upon information and belief, Mr. Bonilla may have personal knowledge regarding information relevant to this matter.

Christopher Pappas is an Executive of Telligent. Christopher Pappas has general knowledge of the following: Plaintiff made a complaint of racial discrimination, Ms. Taylor investigated Plaintiff's complaint, as part of Ms. Taylor's investigation Ms. Taylor learned that Plaintiff violated several company policies, consistently failed to meet Telligent's expectations for masons, and had made threats of violence, and as a result of Ms. Taylor's investigation Ms. Taylor recommended to Telligent that Plaintiff be terminated.

[6]

Michael Pappas is an Executive of Telligent. Michael Pappas has general knowledge of the following: Plaintiff made a complaint of racial discrimination, Ms. Taylor investigated Plaintiff's complaint, as part of Ms. Taylor's investigation Ms. Taylor learned that Plaintiff violated several company policies, consistently failed to meet Telligent's expectations for masons, and had made threats of violence, and as a result of Ms. Taylor's investigation Ms. Taylor recommended to Telligent that Plaintiff be terminated.

**INTERROGATORY NO. 2**: **Describe Timbers' Employment History with Telligent.**

**ANSWER TO INTERROGATORY NO. 2**:

Plaintiff was first hired on January 5, 2017, and subsequently terminated for the first time on an unknown date.

Plaintiff was re-hired for the first time on July 10, 2017, and subsequently terminated for the second time on an unknown date.

Plaintiff was re-hired for the second time on March 20, 2019, and subsequently terminated for the third time on September 27, 2019.

Plaintiff was re-hired for the third and final time on January 24, 2020, and subsequently terminated for the fourth and final time on September 23, 2020.

**INTERROGATORY NO. 3**: **Describe Timbers' job duties and responsibilities during the period from July 1, 2020 through and including September 23, 2020.**

**ANSWER TO INTERROGATORY NO. 3**: Plaintiff's job duties and responsibilities included the following: maintaining tools and workspaces; cutting, shaping, and dressing materials; lifting, carrying, and placing prepared bricks, stone, and blocks; reading and following

[7]

technical drawings; training apprentices; mixing cement and mortar; restoring old and worn masonry; working safely off scaffolding; and performing other related duties as assigned.

**INTERROGATORY NO. 4**: **For each date from the period from July 1, 2020 through and including September 23, 2020, state the number of hours that Timbers worked each date and the location where he worked.**

**ANSWER TO INTERROGATORY NO. 4**:

| Site Name | Foreman | Employee | Date | Section | Type | Avail. Hours | Hours Worked |
|---|---|---|---|---|---|---|---|
| The Gantry - DC | Marcos Martinez | David Timbers | 7/1/2020 | present | REG | 8 | 7.5 |
| Braddock Gateway - VA | Jorge Villegas | David Timbers | 7/2/2020 | present | REG | 8 | 7.5 |
| Braddock Gateway - VA | Jorge Villegas | David Timbers | 7/3/2020 | absent | REG | 8 | 0.0 |
| Braddock Gateway - VA | Jorge Villegas | David Timbers | 7/6/2020 | present | REG | 8 | 8 |
| Braddock Gateway - VA | Jorge Villegas | David Timbers | 7/7/2020 | absent | REG | 8 | 0.0 |
| Braddock Gateway - VA | Jorge Villegas | David Timbers | 7/8/2020 | present | REG | 8 | 5 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 7/9/2020 | present | REG | 8 | 7.5 |
| Braddock Gateway - VA | Jorge Villegas | David Timbers | 7/10/2020 | absent | REG | 8 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 7/13/2020 | present | REG | 8 | 8 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 7/14/2020 | absent | REG | 8 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 7/15/2020 | absent | REG | 8 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 7/16/2020 | absent | REG | 8 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 7/17/2020 | absent | REG | 8 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 7/20/2020 | present | REG | 8 | 0.5 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 7/21/2020 | present | REG | 8 | 7.5 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 7/22/2020 | present | REG | 8 | 7.5 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 7/23/2020 | present | REG | 8 | 7.5 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 7/24/2020 | absent | weather | 5 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 7/27/2020 | present | REG | 8 | 8 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 7/28/2020 | present | REG | 8 | 8 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 7/29/2020 | present | REG | 8 | 8 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 7/30/2020 | absent | REG | 8 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 7/31/2020 | closed | weather | 0 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 8/4/2020 | closed | weather | 0 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 8/5/2020 | present | REG | 8 | 9 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 8/6/2020 | absent | REG | 8 | 0.0 |

[8]

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 8/7/2020 | present | REG | 8 | 8 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 8/10/2020 | present | REG | 8 | 8 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 8/11/2020 | present | REG | 8 | 8 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 8/12/2020 | absent | REG | 8 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 8/13/2020 | closed | weather | 0 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 8/14/2020 | present | REG | 8 | 7 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 8/17/2020 | present | REG | 8 | 7.5 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 8/18/2020 | present | REG | 8 | 8 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 8/19/2020 | present | REG | 8 | 6.5 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 8/20/2020 | present | REG | 8 | 8 |
| Prince Will. HS - VA | Jose Valladares | David Timbers | 8/21/2020 | present | REG | 8 | 8 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 8/24/2020 | absent | REG | 8 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 8/25/2020 | absent | REG | 8 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 8/26/2020 | absent | REG | 8 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 8/27/2020 | absent | REG | 8 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 8/28/2020 | absent | REG | 8 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 8/31/2020 | absent | REG | 8 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 9/1/2020 | absent | REG | 8 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 9/2/2020 | absent | REG | 8 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 9/3/2020 | absent | REG | 8 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 9/4/2020 | absent | REG | 8 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 9/7/2020 | closed | holiday | 0 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 9/8/2020 | absent | REG | 8 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 9/9/2020 | absent | REG | 8 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 9/10/2020 | absent | REG | 8 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 9/11/2020 | absent | REG | 8 | 0.0 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 9/14/2020 | present | REG | 8 | 8 |
| Faraday Park East - VA | Wilber Bonilla | David Timbers | 9/15/2020 | present | REG | 8 | 5 |

See Payroll Hourly Detail spreadsheet produced in Telligent's Response to Plaintiff's Requests for Production of Documents.

It is likely that the Reston, Virginia job site referenced by Plaintiff in paragraph 16 of Plaintiff's Amended Complaint is the Faraday Park East, Virginia site referenced in the above spreadsheet, where Plaintiff worked under Mr. Bonilla during July, August and September of 2020,

[9]

and the Gainesville, Virginia job site also referenced by Plaintiff in paragraph 16 of Plaintiff's Amended Complaint is the Prince William High School, Virginia site, also referenced in the above spreadsheet, where Plaintiff worked under Mr. Valladares on August 21, 2020.

**INTERROGATORY NO. 5**: **Identify each Telligent employee who performed work at the Gainesville, Virginia construction site during the period from July 1, 2020 through and including September 23, 2020.**

**ANSWER TO INTERROGATORY NO. 5**: Telligent has produced a Payroll Hourly Detail spreadsheet containing Plaintiff's work history for this period, which, as stated in Answer to Interrogatory No. 4, includes Plaintiff working at the Prince William High School, Virginia job site (i.e., the Gainesville, Virginia job site) for a single day on August 21, 2020, under Mr. Valladares. See Answer to Interrogatory No. 4 and Payroll Hourly Detail spreadsheet produced in Telligent's Response to Plaintiff's Requests for Production of Documents. Telligent objects to the balance of this interrogatory as it pertains to Telligent employees other than Plaintiff, on the grounds that it is vague, overly broad, ambiguous, unduly burdensome, seeks confidential information, is outside of the scope of permissible discovery, and neither seeks relevant information nor is reasonably tailored to lead to the discovery of relevant information.

**INTERROGATORY NO. 6**: **For each person identified in your answer the preceding interrogatory, state each specific person's race, title, pay rate, supervisor and the type of work being performed by each specific person.**

**ANSWER TO INTERROGATORY NO. 6**: Telligent has produced a Payroll Hourly Detail spreadsheet containing Plaintiff's work history for this period, which, as stated in Answer

to Interrogatory No. 4, includes Plaintiff working at the Gainesville, Virginia (i.e., the Prince William High School job site) for a single day on August 21, 2020, under Mr. Valladares. See Answer to Interrogatory No. 4 and Payroll Hourly Detail spreadsheet produced in Telligent's Response to Plaintiff's Requests for Production of Documents. Telligent objects to the balance of this interrogatory as it pertains to Telligent employees other than Plaintiff, on the grounds that it is vague, overly broad, ambiguous, unduly burdensome, seeks confidential information, is outside of the scope of permissible discovery, and neither seeks relevant information nor is reasonably tailored to lead to the discovery of relevant information.

**INTERROGATORY NO. 7**: **For each person identified in your answer to Interrogatory No. 4, state the dates that each specific person worked at the Gainesville, Virginia construction site during the period from July 1, 2020 through and including September 23, 2020.**

**ANSWER TO INTERROGATORY NO. 7**: Plaintiff worked at the Prince William High School, Virginia job site (i.e., Gainesville, Virginia) for a single day on August 21, 2020, under Mr. Valladares. See Answer to Interrogatory No. 4.

**INTERROGATORY NO. 8**: **Identify any persons who were involved in, consulted with, or participated in, the decision to terminate Timbers' employment with Telligent**

**ANSWER TO INTERROGATORY NO. 8**: Ms. Taylor made the recommendation to terminate Plaintiff. See Answer to Interrogatory No. 1. for further details regarding her investigation and termination recommendation. Moreover, within Telligent's Response to Plaintiff's Requests for Production of Documents, Telligent has produced emails that reference the

Plaintiff. Within these emails are emails from various Telligent employees who were involved in the decision to terminate Timbers.

**INTERROGATORY NO. 9**: **Identify any communications concerning the decision to terminate Timbers' employment with Telligent.**

**ANSWER TO INTERROGATORY NO. 9**: See Answer to Interrogatory No. 1. and the emails referenced in Answer to Interrogatory No. 8, which were produced with Telligent's Response to Plaintiff's Requests for Production of Documents. Moreover, additional verbal communications (i.e., in person, on the telephone) regarding the decision to terminate Plaintiff may have occurred. However, the times, dates, and particulars of these communications are unknown to Telligent at this time.

**INTERROGATORY NO. 10**: **Describe any communications, including any communications that occurred on July 31, 2020, between Timbers and Jose Valladares concerning work at the Gainesville, Virginia construction site.**

**ANSWER TO INTERROGATORY NO. 10**: Telligent objects to this Interrogatory as it is vague, overly broad, ambiguous, and unduly burdensome. Without waiving said objection, assuming the Gainesville, Virginia job site is the Prince William High School, Virginia job site, where Plaintiff worked under Mr. Valladares on August 21, 2020, Mr. Valladares does not recall any communications with Plaintiff that day.

However, on September 18, 2020, several weeks after Plaintiff had been assigned to the Faraday Park East job site (i.e., Reston), but had been absent from that site for 14 days and present for only 2 days, Plaintiff and Plaintiff's brother, Albert Timbers, told Mr. Valladares that they had

[12]

been discriminated against by Mr. Valladares. See Ms. Taylor's Investigation and Payroll Hourly Detail spreadsheet, both of which have been produced within Telligent's Response to Plaintiff's Requests for Production of Documents.

**INTERROGATORY NO. 11**: Describe any communications, including any communications that occurred on September 16, 2020, between Timbers and Tranquilino Villegas that occurred in September 2020.

**ANSWER TO INTERROGATORY NO. 11**: Mr. Villegas does not recall any communications with Plaintiff in September 2020. However, as stated in Answer to Interrogatory No. 1, Mr. Villegas phone records from August 30, 2020 to October 1, 2020, which have been produced with Telligent's Response to Plaintiff's Requests for Production of Documents, indicate Plaintiff, from the phone number (571) 326-9984, called him twice on September 16, 2020. Both phone calls were less than a minute long. It is possible that Mr. Villegas did not pick up either or both of these calls. In any event, Mr. Villegas has no recollection of a conversation with Plaintiff regarding lack of work and/or racial discrimination. It is possible that a conversation regarding lack of work occurred. If it did, Mr. Villegas would have directed the Plaintiff to address the issue with his foreman. However, Mr. Villegas is certain that a conversation regarding racial discrimination did not occur, as he would remember such a conversation and would have taken the appropriate action to address the issue.

**INTERROGATORY NO. 12**: Describe any communications, including any communications that occurred on September 22, 2020 or September 23, 2020, between Timbers and any Telligent employee, including Taylor.

[13]

**ANSWER TO INTERROGATORY NO. 12**: Telligent objects to this Interrogatory as it is vague, overly broad, ambiguous, unduly burdensome, and requests information that Plaintiff has personal knowledge of (i.e., the communications he had with Telligent employees). Without waiving said objection, see Answer to Interrogatory No. 1.

**INTERROGATORY NO. 13**: **Identify each person who, prior to September 24, 2020, was aware of any of the communications described in your answers to Interrogatories Nos. 9, 10 or 11.**

**ANSWER TO INTERROGATORY NO. 13**: Telligent objects to this request on the grounds that is vague, overly broad, ambiguous, and unduly burdensome and seeks information that it does not have knowledge of and is therefore outside the scope of permissible discovery. Without waiving said objection, see Answers to Interrogatory Nos. 1, 9, 10, and 11.

**INTERROGATORY NO. 14**: **Describe any communications that Timbers had with any Telligent employee concerning race or any allegation of racial discrimination.**

**ANSWER TO INTERROGATORY NO. 14**: Telligent objects to this Interrogatory as it is vague, overly broad, ambiguous, unduly burdensome, and requests information that Plaintiff has personal knowledge of (i.e., the communications Plaintiff had with Telligent employees). Without waiving said objection, see Answer to Interrogatory No. 1.

**INTERROGATORY NO. 15**:  **Describe any communications by, between or among Telligent employees concerning Timbers that occurred on September 22, 2020 or September 23, 2020.**

[14]

**ANSWER TO INTERROGATORY NO. 15**: Telligent objects to this Interrogatory as it is vague, overly broad, ambiguous, and unduly burdensome. Without waiving said objection, see Answer to Interrogatory No. 1.

**INTERROGATORY NO. 16**: **Describe all actions concerning Timbers that were taken by any Telligent employee, including Taylor, after Taylor talked with Timbers on September 22 or September 23, 2020.**

**ANSWER TO INTERROGATORY NO. 16**: See Answer to Interrogatory No. 1.

**INTERROGATORY NO. 17**: **If you contend that Timbers was performing his duties and responsibilities in an unsatisfactory manner at any time during the course of his employment with you, provide a complete description of the factual basis for such a contention, including a complete description of all facts and evidence that support the contention, a description of each specific instance of unsatisfactory performance, the identity of any person with personal knowledge of any specific instance of unsatisfactory performance, the date that the specific instance of unsatisfactory performance was documented and all communications that you or any other person had with Timbers concerning any such alleged unsatisfactory performance.**

**ANSWER TO INTERROGATORY NO. 17**: See Answer to Interrogatory No. 1.

**INTERROGATORY NO. 18**: **If Timbers was warned or disciplined in any way (including being "counseled," receiving a "corrective action form" or having any form of notation placed in her employee file) for any alleged performance deficiency or violation,**

[15]

identify the person who made the decision to warn or discipline Timbers and identify any other person who participated in, or was consulted about, the decision.

**ANSWER TO INTERROGATORY NO. 18**: See Answer to Interrogatory No. 1.


**INTERROGATORY NO. 19**: If you have knowledge of any person carrying on an insurance business that might be liable to satisfy part or all of a judgment that might be entered in this action or to indemnify or reimburse the payments made to satisfy the judgment, identify that person and state the applicable policy limits of any insurance agreement under which the person might be liable.

**ANSWER TO INTERROGATORY NO. 19**: None.


**INTERROGATORY NO. 20**: For each witness identified by you in connection with the disclosures required by Fed. R. Civ. P. 26(a)(2)(A), provide a complete statement of the opinions to be expressed and basis and reasons therefore.

**ANSWER TO INTERROGATORY NO. 20**: See Answer to Interrogatory No. 1.


**INTERROGATORY NO. 21**: For each witness you have retained or specially employed to provide expert testimony in this case, or employed by you whose duties regularly involve giving expert testimony and whom you expect to testify at trial, provide a complete statement of the opinions to be expressed and the basis and reasons therefore.

**ANSWER TO INTERROGATORY NO. 21**: None.


Telligent reserves the right to supplement these Answers to Interrogatories.

## <u>VERIFICATION</u>

I, Jason Roberts, am the Director of Human Resources of Defendant, Telligent Masonry, LLC. I am the agent of Defendant, Telligent Masonry, LLC for the purpose of answering Plaintiff David Timbers' Interrogatories, which contains 21 Interrogatories. I have read the foregoing Interrogatories; the Answers thereto are true and correct to the best of my knowledge, information, and belief.

<u>5/19/2022</u>
Date

_____
Jason Roberts
Director of Human Resources


Respectfully submitted,

May 19, 2022

/s/ Signed Electronically
Brandon N. Mourges, Bar No. 29477
CREPEAU MOURGES
1344 Ashton Road, Suite 110
Hanover, Maryland 21076
brandon@usataxlaw.com
Phone: 667.900.9912
Facsimile: 667.999.0202
*Counsel for Telligent Masonry, LLC*

May 19, 2022

/s/ Signed Electronically
Thomas J. DeGennaro, Bar No. 22475
CREPEAU MOURGES
1344 Ashton Road, Suite 110
Hanover, Maryland 21076
tom@usataxlaw.com
Phone: 667.262.9382
Facsimile: 667.999.0202
*Counsel for Telligent Masonry, LLC*

[17]

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of May, 2022, a copy of the foregoing sent via first class mail and email to the following:

James M. Ray, II, Esq.
Ray Legal Group, LLC
8720 Georgia Avenue, Suite 904
Silver Spring, MD 20910
*Counsel for Plaintiff*

Imoh E. Akpan, John K. Archibald, and Alana R. Glover
Goldberg Segalla LLP
111 South Calvert Street, Suite 2000
Baltimore, Maryland 21202
*Counsel for Defendant Tia Taylor*

/s/ Signed Electronically
Thomas J. DeGennaro, Bar No. 22475

[18]