## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**DAVID TIMBERS,**                              *

    **Plaintiff,**                          *

    **v.**                                  *          **CIVIL NO. JKB-21-00293**

**TELLIGENT MASONRY, LLC,**                     *

    **Defendant.**                           *

   *    *    *    *    *    *    *    *    *    *    *    *

### MEMORANDUM

Plaintiff David Timbers brings several claims against Defendant Telligent Masonry, LLC d/b/a Telligent Masonry Construction ("Telligent").[1] (*See generally* Am. Compl., ECF No. 10.) Timbers brings suit against Telligent for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and violations of 42 U.S.C. § 1981 and against Tia Taylor for violations of 42 U.S.C. § 1981. (*See* Am. Compl. ¶ 1.)

Presently pending before the Court is Defendant's Motion for Summary Judgment (Mot. Summ. J., ECF No. 48) and Plaintiff's Motion for Leave to File Second Amended Complaint ("Motion to Amend") (Mot. Amend., ECF No. 41). Both Motions are fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth in this Memorandum, a separate Order shall issue denying Defendant's Motion for Summary Judgment and granting Plaintiff's Motion for Leave to File Second Amended Complaint.

---

[1] Plaintiff's Complaint, Amended Complaint, and proposed Second Amended Complaint also name Tia Taylor as a defendant in this matter, but she was dismissed as a defendant by joint stipulation of the parties. (ECF No. 45, 46.)

## I.      *Factual Background*[2]

Timbers began his employment at Telligent as a brick mason in March 2019. (Am. Compl. ¶ 11.) Timbers alleges that he was discriminated against because he is African American and that he was retaliated against for making internal complaints regarding that discrimination. (*Id.* ¶¶ 13– 14.)

Timbers alleges that, beginning on August 21, 2020,[3] his supervisors—Jose Valladares, Joseph Williams, and Tranquilino Villegas—denied him work opportunities and reduced his hours. (*Id.* ¶¶ 13, 15.) When construction was temporarily halted at a Reston, Virginia worksite where Timbers was working on August 21, 2020, he and his brother (who is also African American) were directed to another worksite in Gainesville, Virginia. (*Id.* ¶ 16.) When they arrived, Valladares told them that there was no work for them. (*Id.*) However, before Timbers and his brother left the worksite, "a group of fellow Brick Masons, all of whom were Hispanic and employees of Telligent arrived . . . and were put to work." (*Id.*) Timbers and his brother were "begrudgingly" permitted to work for the day, but "[a]t the end of the day, Defendant Telligent and supervisor Jose Valladares told [Timbers] and his brother not to return to the Gainesville, Virginia work site and, if they did, he would not assign them any work."[4] (*Id.*) Timbers alleges that similarly situated non-African American brick masons, who were also supervised by Valladares and Villegas, were

---

[2] The factual background provided is largely drawn from facts that are undisputed (or indisputable) by the parties. To the extent it addresses disputed facts, those facts are presented in the light most favorable to Plaintiff as the non-movant. *See Pittman v. Nelms*, 87 F.3d 116, 119 (4th Cir. 1996) ("[W]ith any motion for summary judgment, [a court] must view the evidence in the light most favorable to the nonmovant.").

[3] Plaintiff's Amended Complaint alleged that the relevant date was July 31, 2020, rather than the factually correct date of August 21, 2020. Plaintiff's proposed Second Amended Complaint corrects this error. (*See* Sec. Am. Compl. ¶ 13, ECF 41-1.) The Court acknowledges that August 21, 2020 is the factually correct date of the events described by the parties, and will substitute this correct date for the incorrect July 31, 2020 when citing to the Amended Complaint, even though it is therein misstated.

[4] Plaintiff's proposed Second Amended Complaint alleges that a third individual, Jose Luis Penado, was present for this interaction and also conveyed the warning for Plaintiff not to return to the Gainesville, Virginia worksite. (*See id.* ¶ 16.)

not denied work opportunities or assigned reduced hours of work.[5]   (*Id.* ¶ 17.) He alleges that these other brick masons "were subject to the same work standards . . . and were performing the same work and the same standard of work" as he did.   (*Id.*)   Timbers alleges that "[n]o differentiating or mitigating circumstances exist that justify Defendant Telligent's more favorable treatment of these non-African American Brick Masons in comparison to Defendant Telligent's less favorable treatment of [Timbers], other than their status as non-African Americans." (*Id.*)

Timbers alleges that he was not assigned any work for several days after August 21, 2020 and, thereafter until his termination on September 23, 2020, was assigned reduced hours.   (*Id.* ¶ 18.) Timbers contends that this reduction in hours was "not due to any business justification or circumstances on the part of Defendant Telligent, as other non-African American Brick Masons continued to work their regular hours." (*Id.*) He states that he was informed that construction was being halted at the Gainesville worksite, but later learned that construction was not halted and the non-African American brick masons "were allowed to continue to work at that site" until September 11, 2020. (Opp'n to Mot. Summ. J. at 5, ECF No. 49.) He also alleges that, after work on Friday, August 21, 2020, he called Telligent's main office number to discuss the lack of work and "report the comments made to him by Jose Luis-Penado/Jose Valladares" regarding Valladares' refusal to work with him. (*Id.* at 6.) Timbers recounts that Joseph Williams returned his call and informed him that he was not being assigned work because he got into a physical altercation with another employee, which Timbers contends did not occur. (*Id.*)

Between September 10 and September 13, 2020, Timbers was told to return to the Reston, Virginia worksite to work on September 14, 2020. (*Id.*) He worked the full day on September 14 and a partial day on September 15, 2020. (*Id.*) On September 15, Timbers was directed to report

---

[5] Plaintiff names six similarly situated, non-African American brick masons in the proposed Second Amended Complaint. (*See id.*)

to the Gainesville worksite for the following day. (*Id.*) Timbers did not show up at the worksite on September 16, alleging that he "knew that the trip would be a waste of time and Mr. Valladares would not allow [him] to work at the site." (*Id.*)

That day, Timbers alleges that he made an internal complaint to Villegas. (Am. Compl. ¶ 19.) In making that internal complaint, he indicated that he believed that the August 21, 2020 incident and the following reduction in hours was due to his race and that, if he was not returned to regular hours, he would file a charge with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 20.) He called Telligent's main office number on September 22, 2020 "to complain about Mr. Valladares refusing work" to himself and his brother and to state his intent to file discrimination charges, but was told by a receptionist that his call would be returned the following day. (Opp'n to Mot. Summ. J. at 8.)

Tia Taylor (HR Specialist, Telligent) called Timbers around 7:00 a.m. on September 23, 2020. (*Id.*) During that conversation, Timbers reiterated his complaint of race discrimination and reduction of hours, informing Taylor of his intent to file a charge of race discrimination with the EEOC. (Am. Compl. ¶ 23.) Taylor "opened an alleged investigation into his claims of race discrimination," but this investigation "lasted only a few hours." (*Id.* ¶¶ 24–25.)

Timbers alleges that, immediately after the phone call with Taylor, she "recommended, that [Timbers'] employment be terminated." (*Id.* ¶ 26.) At 9:29 a.m. on the same day, Taylor forwarded an "employee investigation report" to Villegas, Valladares, Petra Botha (Taylor's Supervisor), Michael Pappas (Vice President, Telligent), and Christopher Pappas (President & CEO, Telligent). (Opp'n to Mot. Summ. J. at 9.) At 9:35 a.m., Michael Pappas responded to the e-mail, instructing Villegas and Taylor to "terminate David Timbers." (Pappas 9/23/2020 Email, Opp'n to Mot. Summ. J. Ex. 10, ECF No. 49-10.) At 9:49 a.m., Valladares responded: "Please

4

sent to all the fore man not hire he's family timber because all them are troublemaker Been in jail

for a long time That's why they are like that bad Attitude." (Valladares 9/23/2020 Email, Opp'n

to Mot. Summ. J. Ex. 9, ECF No. 49-9.)

Also on September 23, 2020, Taylor "drafted an Employee Disciplinary/Termination

Form" that Timbers alleges "contains false allegations of [his] poor work performance" and which

indicated that he made verbal threats against another employee. (Am. Compl. ¶¶ 26–27.) The

same day, Taylor also drafted a Termination Notice, which Timbers received in the mail several

days later. (*Id.* ¶ 28.) It stated that Timbers was terminated due to his "conduct over the past

several months." (*Id.* ¶ 29.) Timbers alleges that he was "never disciplined or otherwise informed

by Defendants during the course of his employment that there were any issues with his work

performance at any time prior to his termination." (*Id.* ¶ 30.) Timbers avers that "[t]he false

allegations/justifications provided by Defendants to legitimize Plaintiff's termination are pretexts"

and that the true reason for his termination was either discrimination, retaliation, or both. (*Id.* ¶

33.)

Timbers brings four claims against Telligent: a Title VII racial discrimination claim (Count

I); a Title VII retaliation claim (Count II); a 42 U.S.C. § 1981 discrimination claim (Count III);

and a 42 U.S.C. § 1981 retaliation claim (Count IV). (*Id.* ¶¶ 37–62.)

## *II.    Procedural History*

Timbers filed a Charge of Discrimination against Telligent with the EEOC on November

19, 2020 ("EEOC Charge") and was issued a right-to-sue letter on December 22, 2020. (*Id.* ¶ 9.)

Timbers filed his Complaint on February 4, 2021. (ECF No. 1.) Telligent and Taylor filed

Motions to Dismiss on April 1, 2021. (ECF Nos. 8, 9.) Thereafter, Timbers filed his Amended

Complaint on April 13, 2021 (ECF No. 10) and Telligent and Taylor subsequently filed their

respective Motions to Dismiss the Amended Complaint for failure to state a claim. (ECF Nos. 12, 13.) The Court denied the initial Motions to Dismiss as moot, and also denied the Motions to Dismiss the Amended Complaint, ruling that Timbers' discrimination and retaliation claims were sufficiently pled against both Defendants. (ECF Nos. 25, 26.)

The Court thereafter set a Scheduling Order, which provided, among other things, that the deadline for the amendment of pleadings was May 9, 2022. (ECF No. 33.) Plaintiff filed the instant Motion for Leave to File Second Amended Complaint on July 22, 2022. (ECF No. 41.) On August 17, 2022, the parties filed a joint stipulation dismissing all claims asserted against Taylor (Count V of the Amended Complaint). (ECF No. 45.) After the close of discovery, Telligent filed a Motion for Summary Judgment. (ECF No. 48.)

## III.    *Legal Standards*

### A.  *Standard for Summary Judgment*

Federal Rule of Civil Procedure 56 provides that a party can move for summary judgment on a "claim or defense—or the part of [any] claim or defense," provided it shows "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If a party carries this burden, then the Court will award summary judgment, unless the opposing party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. Fed. R. Civ. P. 56(e). If sufficient evidence exists for a reasonable factfinder to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented, and summary judgment will be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the

[opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252.

### B. *Standard for Motion to Amend*

A motion for leave to amend pleadings filed beyond the deadline set forth in the scheduling order will only be granted if it satisfies both the "good cause" standard of Federal Rule of Civil Procedure 16(b)(4) and the standard of Rule 15(a)(2) for allowing amendment of pleadings. *See Moses v. Cowan Distrib. Servs., Inc.*, Civ. No. JKB-10-1809, 2012 WL 527657, at *2 (D. Md. Feb. 16, 2012); *see also Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298–99 (4th Cir. 2008) (noting tension between Rule 15 and Rule 16; not reaching district court's Rule 15(a) finding of futility because it affirmed district court's Rule 16(b) application of "good cause" standard); *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 631 (D. Md. 2003) ("[O]nce the scheduling order's deadline for amendment of the pleadings has passed, a moving party first must satisfy the good cause standard of Rule 16(b); if the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under [Rule] 15(a).").

Good cause exists if "deadlines cannot reasonably be met despite the party's diligence." *Cook v. Howard*, 484 Fed. App'x 805, 815 (4th Cir. 2012) (per curiam) (quotations omitted). Courts consider "whether the moving party acted in good faith, the length of the delay and its effects, and whether the delay will prejudice the non-moving party." *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 520 (D. Md. 2014) (citing *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768–69 (D. Md. 2010)). Modification should not be permitted where the movant "has not acted diligently" to comply with the schedule. *Cook*, 484 Fed. App'x at 815 (quotations omitted).

If the Court is satisfied that good cause exists, it applies the Rule 15(a) standard, which directs the Court to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fourth Circuit has stated that leave to amend under Rule 15(a) should be denied only in three

situations: (1) when the opposing party would be prejudiced; (2) when the amendment is sought in bad faith; or (3) when the proposed amendment would be futile. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). An amendment is not prejudicial if the defendant "was from the outset made fully aware of the events giving rise to the action." *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980). In such situation "an allowance of the amendment could not in any way prejudice the preparation of defendant's case." *Id.*

## IV.   *Analysis*

Timbers has adduced enough facts that, when viewed in the light most favorable to him, could lead a reasonable factfinder to conclude that Telligent violated Title VII and 42 U.S.C. § 1981, with respect to his discrimination and retaliation claims. Telligent's Motion for Summary Judgment will therefore be denied. Additionally, Timbers has both shown good cause to amend the complaint and satisfied the Rule 15 standard. Timbers' Motion to Amend will therefore be granted.

### A.  *Motion for Summary Judgment*

Title VII racial discrimination and retaliation claims lacking direct evidence are both governed by the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, a plaintiff must first establish a prima facie case of discrimination by showing: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30 (2012). "In the employment context, courts analyze claims of racial discrimination brought under § 1981 according to the same requirements as those brought under Title VII of the Civil Rights Act of 1964." *Bowling v.*

*Humanim, Inc.*, No. JKB-16-3298, 2017 WL 713862, at *2 (D. Md. Feb. 22, 2017) (citing *Gairola v. Va. Dept. of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985)). To establish a prima facie case of retaliation, a plaintiff must show: "(i) that [he] engaged in protected activity, (ii) that [his] employer took adverse action against [him], and (iii) that a causal relationship existed between the protected activity and the adverse employment activity." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (internal quotation marks and citation omitted). Once a plaintiff establishes his initial case for a claim of discrimination and/or retaliation, "[t]he burden then shifts to the [defendant] to show that its purportedly [discriminatory or] retaliatory action was in fact the result of a legitimate [non-discriminatory or] non-retaliatory reason." *Id.* If the defendant does so, "the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported [non-discriminatory or] nonretaliatory reasons were not its true reasons, but were a pretext for discrimination." *Id.* (internal quotation marks and citations omitted).

### 1. *Prima Facie Case*

As an initial matter, genuine disputes of material fact exist as to Timbers' prima facie cases for both his discrimination and retaliation claims. In particular, there is a genuine dispute as to whether Telligent's asserted job expectations were legitimate or genuine.

### a. *Discrimination Claims*

Telligent argues that Timbers has failed to meet his threshold burden of establishing a prima facie case of discrimination because he has not demonstrated that he met Telligent's legitimate expectations. (Mot. Summ. J. Mem. Supp. at 16–22, ECF No. 48-1.) But the Fourth Circuit has held that "[a]lthough on summary judgment an employer is free to assert that the job expectation prong has not been met, nothing prohibits the employee from countering this assertion with evidence that demonstrates (or at least creates a question of fact) that the proffered

'expectation' is not, in fact, legitimate at all." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 517 (4th

Cir. 2006). Viewing the evidence in the light most favorable to Timbers, there is a genuine issue

of material fact as to whether Telligent's asserted expectations were legitimate or genuine.

Telligent explained in its Motion for Summary Judgment that it expects employees to be timely,

refrain from violent activity, and lay brick that is "straight, plumb, and not contain[ing] holes."

(Mot. Summ. J. Mem. Supp. at 6.) Despite this, Telligent's employees have indicated that these

standards are not often enforced. For example, Villegas testified that employees are generally not

fired for poor work performance (Villegas Dep. 39:16–21, ECF No. 48-3 at 124) or for engaging

in an act of violence or a fight on a worksite (Villegas Dep. 21:9–22:11, 41:5–8), nor are they

generally fired for inconsistent attendance (Villegas Dep. 41:22–42:4). In fact, Villegas testified

that he is unaware of any mason other than Timbers who has been fired by Telligent.[6] (Villegas

Dep. 40:3–5.)

    Further, Timbers disputes having notice of the alleged performance deficiencies and there

is no documentation to support Telligent's allegation to the contrary. (Reply Mem. Supp. of Mot.

Summ. J. at 6, ECF No. 55.) Telligent offers the testimony of Timbers' supervisors, noting his

poor workmanship and Valladares' assertion that he "told [Timbers] on a near-daily basis that his

work performance was inadequate." (*Id.* at 17.) But this evidence is insufficient to demonstrate

the absence of a genuine dispute as to Timbers' work performance. Courts typically require an

employer to show that it issued "formalized notifications of poor performance" to find that an

employee failed to meet expectations. *Huang v. Gutierrez*, No. AW-08-2882, 2010 WL 93274, at

* 7 (D. Md. Jan. 5, 2010); *see also Warch*, 435 F.3d at 515 (holding that plaintiff failed to make

---

[6] Telligent acknowledged in its answer to Timbers' interrogatories that Timbers' brother and cousin were also
terminated by Telligent. (Mot. Summ. J. Ex. X at 1, ECF No. 48-3.) Timbers notes that his nephew was terminated,
and it appears the parties are referring to the same individual. (Opp'n to Mot. Summ. J. at fn. 9). Both Timbers'
nephew and brother are also African American. (*Id.* at 4, fn. 19.)

prima facie case where "[defendant] reprimanded [plaintiff] based on concrete, specific observations and accompanied its reprimands with explicit instructions on how to improve."). Telligent's assertion that Timbers was repeatedly reprimanded for his workmanship, which Timbers generally disputes, therefore fails to satisfy its burden at summary judgment.

Although Telligent is correct that the ultimate burden is on the plaintiff to make this showing, it misconstrues the burden of proof at the summary judgment stage. As the movant, Telligent bears the burden of demonstrating the absence of any genuine dispute of material fact. *See Adickes*, 398 U.S. at 157. Thus, this failure of proof cuts against Telligent, and Telligent has not demonstrated the existence of legitimate standards. This issue is therefore a genuine issue of material fact to be determined at trial.

### b. *Retaliation Claims*

Telligent also argues that Timbers failed to establish a prima facie case for retaliation in part because: (1) Telligent did not take an adverse action against Timbers; (2) Timbers did not engage in a protected activity; and (3) Timbers cannot show that the alleged protected activity and adverse action were causally connected.

Though Telligent disputes the existence of a protected activity and adverse action, the Court resolved both of these contentions in its March 22, 2020 Memorandum. (ECF No. 25.) The Court held that Timbers "engaged in protected activity when he complained to Villegas and Taylor" (*Id.* at 10) and that Telligent took adverse action against Timbers when it terminated him, "as termination is the quintessential adverse employment action." (*Id.* at 11 (citation omitted).) The parties have not set forth additional evidence or arguments that causes the Court to conclude otherwise at this stage of the litigation. The Court therefore need only assess the question of causal connection.

Courts consider the same type of evidence to analyze both the causal connection requirement and the issue of pretext. *Mohammed v. Central Driving Mini Storage, Inc.*, 128 F. Supp. 3d 932, 947 (E.D. Va. 2015); *see also Jaudon v. Elder Health, Inc.*, 125 F. Supp. 2d 153 (D. Md. 2000) (finding evidence that established plaintiff's prima facie case was also pertinent to plaintiff's allegations of pretext); *Philbrick v. Holder*, 583 Fed. App'x 478, 490 (6th Cir. 2014) (unreported) ("[T]he court may consider evidence of pretext to buttress [the causal connection] prong of the prima facie case"); *Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 846 (2d Cir. 2013) ("A plaintiff may prove [but-for causation] by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action. From such discrepancies, a [factfinder] could conclude that the explanations were a pretext for a prohibited reason."). Further, the burden for establishing causation at the prima facie stage is "less onerous" than at the pretext stage. *Foster*, 787 F.3d at 251 (citation omitted). It therefore follows that if a plaintiff can prove pretext, he will necessarily be able to satisfy the requirements of the causation analysis. *See id.* at 252 ("A plaintiff who can show that retaliation was the real reason for the [adverse employment action], will necessarily be able to show that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct.") (internal quotation marks and citation omitted). Thus, the Court considers both the evidence for causation and for pretext below.

### 2. Legitimate Non-Retaliatory Reason

Telligent asserts two non-discriminatory and non-retaliatory reasons for denying Timbers work and for terminating him: (1) poor work performance and (2) a threat of violence against Valladares. (Mot. Summ. J. Mem. Supp. at 2.) As discussed above, there is a genuine dispute of material fact regarding Timbers' work performance and Telligent's work expectations. Further,

Timbers disputes threatening violence against Valladares. Thus, a genuine dispute of material fact also exists within the second step of the *McDonnell Douglas* framework.

### 3. Pretext

Though the Court has determined that genuine disputes of material fact exist within the first two steps of the *McDonnell Douglas* framework, it proceeds with a pretext analysis because "once the employer asserts a legitimate, non-discriminatory reason, the question whether the employee actually made out a prima facie case is no longer relevant and thus disappears and drops out of the picture." *E.E.O.C. v. Mfrs. and Traders Trust Co.*, 429 F. Supp. 3d 89, 120–21 (D. Md. 2019) (internal quotation marks omitted) (quoting *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 493–94 (D.C. Cir. 2008)). Where, as here, a defendant advances a non-discriminatory reason for the adverse employment action, "the summary judgment inquiry focuses largely on the third step." *E.E.O.C. v. CACI Secured Transformations, LLC*, No. JKB-19-2693, 2021 WL 1840807 (D. Md. May 7, 2021). Accordingly, the Court considers Defendant's arguments regarding whether Plaintiff has shown that "the employer's purported nonretaliatory reasons were not its true reasons, but were a pretext for [unlawful retaliation]." *Foster*, 787 F.3d at 250; *see also Mohammed*, 128 F. Supp. 3d at 946 ("In retaliation cases, the same type of evidence may be used to prove both the causal connection requirement and pretext.").

"A plaintiff can prove pretext by showing that the defendant's explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [retaliation]." *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004); *see also Staley v. Gruenberg*, 575 Fed. App'x 153, 155–56 (4th Cir. 2014). This showing can take many evidentiary forms. For instance, a showing that defendant "at different times, gives different and arguably inconsistent explanations" may allow an "infer[ence] that the articulated reasons are pretextual." *E.E.O.C. v.*

13

*Sears Roebuck and Co.*, 243 F.3d 846, 853 (4th Cir. 2001) (quoting *Dominguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 432 (1st Cir. 2000)). Likewise, "a factfinder could infer from the late appearance of [defendant's] justification that it is a post-hoc rationale, not a legitimate explanation for [its] decision." *Id.* (citing *Tyler v. Re/Max Mountain States, Inc.*, 232 F.3d 808, 813 (10th Cir. 2000)). If a plaintiff proffers sufficient evidence such that a reasonable jury could find pretext, he need not offer independent evidence of retaliatory animus as "the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000). "Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Id.*

Applying these general principles to Telligent's proffered explanations for Timbers' termination leads the Court to conclude that various disputes of material fact preclude summary judgment. Timbers has adduced enough facts that, when viewed in the light most favorable to him, could lead a reasonable factfinder to conclude that the two asserted grounds for his termination were pretext and that the but-for cause for Timbers' termination were his race and/or his protected activity.

First, as noted, there is a genuine dispute as to whether Telligent's asserted standards are legitimate, and also as to whether Timbers threatened violence to Valladares. Further, the only documentation of Timbers' poor work performance and violent behavior occurred after Valladares refused to provide Timbers work and after his protected activity, in Taylor's report recommending termination. Thus, "this is not a case where a material dispute of fact regarding pretext can be rejected based on contemporaneous concerns about an employee's performance." *Harris v.*

14

*Wormuth*, No. JKB-18-3562, 2022 WL 899953, at *7 (D. Md. Mar. 28, 2022) (citation omitted).

Rather, a reasonable factfinder could conclude "that it is a post-hoc rationale, not a legitimate

explanation for [its] decision." *Sears Roebuck and Co.*, 243 F.3d at 853. Additionally, Timbers

received work from Telligent in the time between Valladares turning him away and his racial

discrimination complaint to Taylor, which could lead a reasonable factfinder to infer that Telligent

"had been willing to tolerate or attempt to correct issues with [Timbers'] work" until he indicated

his intent to file a complaint with the EEOC, "even if those issues would have been perfectly valid

reasons" for terminating him. *Harris*, 2022 WL 899953, at *9. It also may give rise to the

inference that it was Timbers' race, and not his work performance, that caused Telligent to reduce

his work hours after Valladares turned him away. Moreover, Timbers alleges that Telligent

employs only a small number of Black masons, three of whom (Timbers, his brother, and his

nephew) have been terminated by the company and have been noted by Valladares as all being

"troublemaker[s]," referencing that they have "[b]een in jail for a long time." (Opp'n to Mot.

Summ. J. at 19.) Finally, Telligent directed that Timbers be terminated on the very same day that

he complained of racial discrimination and threatened to file an EEOC charge on that basis. (Am.

Compl. ¶¶ 20, 22, 28.) As explained in the Court's March 22, 2020 Memorandum, this temporal

proximity is sufficient to support a reasonable inference of pretext. (ECF No. 25 at 12.)

In sum, the record is replete with genuine disputes of material fact, which exist at each of

the three levels of the *McDonnell Douglas* framework. The Court therefore must deny Telligent's

Motion for Summary Judgment.

### 4. *Damages*

Telligent argues that even if the Court does not grant its Motion for Summary Judgment

on Timbers' claims, it should order that Timbers is not entitled to emotional distress or punitive

damages in this matter.[7] (*See* Mot. Summ. J. Mem. Supp. at 31.) Damages for emotional distress and punitive damages each require an inquiry into the mental state of the relevant parties, which is not appropriate at the summary judgment stage. *See* 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2730 (4th ed. 2008) ("Inasmuch as a determination of someone's state of mind usually entails the drawing of factual inferences as to which reasonable people might differ—a function traditionally left to the jury—summary judgment often will be an inappropriate means of resolving an issue of this character. . . . Cases requiring a showing of malice also necessarily call defendant's state of mind into question and summary judgment often will be refused when that issue is raised."). The Court thus declines to rule on the issue of damages at this juncture and reserves it as an issue to be determined at trial.

### B. *Motion for Leave to File a Second Amended Complaint*

Timbers has also filed a Motion for Leave to File Second Amended Complaint. (ECF No. 41.) In his proposed Second Amended Complaint, Timbers does not propose any new causes of action. Rather, it includes relatively minor amendments. Telligent's opposition to the Motion to Amend focuses on two amendments to the factual allegations—first, that Timbers corrects the date on which Valladares allegedly discriminated against him from July 31, 2020 to August 21, 2020 and second, that Timbers names a previously unmentioned individual, Jose Luis Penado, as being involved in the August 21, 2020 incident. (ECF No. 41-1 (Second Amended Complaint); ECF No. 42-1 (Opp'n to Mot. Amend. Mem. Supp.).) Telligent argues that the Scheduling Order's deadline for amendment of pleadings passed, and Timbers has not demonstrated "good cause" under Rule 16, and that even assuming he has done so, Timbers did not satisfy the requirements of Rule 15. (*See generally* Opp'n to Mot. Amend. Mem. Supp.) The basis for Telligent's

---

[7] Though he initially sought economic damages, Timbers' proposed Second Amended Complaint omitted this prayer for relief. The Court therefore declines to analyze Telligent's assertion regarding economic damages.

opposition to the Motion is largely that the amendments "were either known or should have been" known to Timbers prior to this time. (*Id.* at 3.) Telligent also argues that the timing of the Motion, which was filed toward the end of discovery, is "highly prejudicial." (*Id.* at 12.)

The Court concludes that Timbers has demonstrated good cause under Rule 16. Timbers contends that "much of the factual information that is now included in the proposed Second Amended complaint was obtained and/or derived from Telligent's discovery responses and document production," which Timbers did not receive until after the deadline for amendments. (Reply Mem. Supp. of Mot. Amend. at 2, ECF No. 47.) The Court sees no evidence of Timbers' lack of diligence given this timeline.

Having concluded that Timbers has satisfied the good cause standard of Rule 16(b), the Court easily concludes he also satisfies the requirements of Rule 15(a). The Court is unpersuaded by Telligent's arguments that Timbers demonstrated bad faith (*see* Opp'n to Mot. Amend. Mem. Supp. at 12) because, as discussed above, the timing of discovery production precluded compliance with the deadline. The Court is also unpersuaded by Telligent's arguments concerning prejudice. First, the correct date of the alleged discriminatory incident has been known to Telligent and the correction came as a result of information provided by Telligent. Second, Telligent argues that the alleged prejudice would result only if it were not permitted to conduct additional discovery. (*Id.* at 13.) Therefore, rather than deny the Motion to Amend, the Court will reopen discovery for the purpose of deposing the newly named witness, Jose Luis Penado, provided that it occurs within 30 days of this Memorandum. For these reasons, the Court will grant Timbers' Motion for Leave to File Second Amended Complaint.

## V. *Conclusion*

For the reasons stated above, a separate Order shall issue denying Defendant's Motion for

Summary Judgment (ECF No. 48), granting Plaintiff's Motion for Leave to File Second Amended

Complaint (ECF No. 41), and reopening discovery for the purpose of deposing Jose Luis Penado.

DATED this ___7___ day of December, 2022.

BY THE COURT:

_James K. Bredar_

James K. Bredar
Chief Judge

18